RONALD FITZGERALD ROBINSON, a/k/a Ronald Jeffery Robinson, Ronald Fletcher Robinson, Roland Page Robinson, Ronald (NMN) Robinson, Ronald W. Robinson, Ronald Jeffery Robertson, Ronald Fitzgerald Robertson, Ronald Page *v.* STATE OF MARYLAND

[No. 506, September Term, 1973.]

*Decided March 13, 1974.*

The cause was argued before THOMPSON, MOYLAN and DAVIDSON, JJ.

*John J. Garrity*, with whom was *Edward P. Camus*, Public Defender for Prince George's County, on the brief, for appellant.

*Bernard W. Raum, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Warren F. Sengstack, State's Attorney for Calvert County, Arthur A. Marshall, Jr., State's Attorney for Prince George's County*, and *Garrett Neal, Assistant State's Attorney for Prince George's County*, on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Ronald Fitzgerald Robinson, was convicted in the Circuit Court for Calvert County by a jury, presided over by Judge Perry G. Bowen, Jr., of (1) the first-degree murder of Anthony J. Viola, (2) the first-degree murder of Mark V. Bressman, (3) assault with intent to murder Robert J. Loewy, (4) attempted robbery with a dangerous and

deadly weapon, and (5) the unlawful use of a handgun. The case had earlier been removed from Prince George's County.

Upon this appeal, the appellant raises two interesting contentions, both dealing with burdens of proof:

(1) That the trial court erred in denying his motion for judgment of acquittal at the close of the entire case, when it allegedly bypassed an independent review of the question and predicated the second denial "on the grounds which we considered and discussed at the time the motion was originally submitted; " and

(2) That the trial court erred in instructing the jury that the defense of alibi is an affirmative defense, requiring the appellant to establish his alibi by a fair preponderance of the evidence.

### The Basis for the Motion for a Judgment of Acquittal

Art. 27, § 593, makes it clear that a motion for judgment of acquittal is predicated upon the legal insufficiency of the evidence to convict. The motion, although appropriate at two different stages of the case, is the same motion and the standard by which it is judged does not waver with the stage at which it is made. § 593 provides:

> "In the trial of all criminal cases, the jury shall be the judges of law, as well as of fact, except that at the conclusion of the evidence for the State a motion for judgment of acquittal on one or more counts, or on one or more degrees of an offense, may be made by an accused on the ground that the evidence is insufficient in law to justify his conviction as to any such count or degree. If the motion is denied, he may offer evidence on his own behalf without having reserved the right to do so, but by so doing, he withdraws his motion. The motion may be made at the close of all the evidence whether or not such motion was made at the conclusion of the evidence for the State. If the motion is denied the defendant may have a review of such ruling on appeal."

Maryland Rule 755 simply implements § 593. *Vuitch v. State*, 10 Md. App. 389, 396, 271 A. 2d 371, spelled out the purpose of the motion:

> "Without question, the office of the motion for judgment of acquittal is essentially limited to challenging the legal sufficiency of the evidence to support a guilty verdict; the motion seeks the obtention of a court-entered judgment of acquittal of the offense with which the accused stands charged."

In serving that purpose, Judge Bowen entertained a motion for a judgment of acquittal at the conclusion of the State's case. With painstaking care, he reviewed the legal sufficiency of the State's evidence and then denied the motion:

> "Gentlemen, the motion requires the Court to consider the evidence thus far produced by the State in the light most favorable to the State, to draw any inferences which may be drawn from the evidence, whether we think the jury will in fact draw or not, for the purposes of determining whether or not there is sufficient competent and probable evidence in the record from which the jury can be satisfied as required by law of the guilt of the accused. The Court does not propose to review in minute detail the evidence thus far presented, except to say that it tends to show generally that some individual entered the Lenox Store, accosted the three employees in the store, Mr. Viola, Mr. Bressman and Mr. Loewy; shot both Viola and Bressman with fatal effect, and shot Mr. Loewy twice, once inflicting a slight wound, and the second time inflicting a very grave wound indeed, which, while it didn't kill him, has substantially injured him, and it was in an area of his body which does contain vital organs and is generally regarded as a very vulnerable part of the human body. The evidence would tend to show, by testimony of Mr.

Loewy, that at the time he was shot he saw whoever this person was reach in and open the cash drawer and remove a handful of money, remove money in his hand, and that there was in that drawer approximately a hundred and forty dollars. The weapon used in this episode was described by Mr. Loewy as a pistol, and a pistol is a dangerous and deadly weapon by the Statute of Maryland, and it is unlawful to use such a weapon in the commission of a crime. The evidence tending to show criminal agency on the part of the defendant stems from that line of testimony which tends to show that this defendant was one and the same man who came into the store earlier that day, attempted to purchase a lamp, and then he came back to return it. The evidence tends to show this was the man who did the shooting. Now, the evidence which tends to connect this defendant with that man, briefly stated, is that his fingerprints appeared on the lamp in question; his handwriting is similar or identical as the person who signed the receipt; and the weapon was found in his car after he was arrested is similar to in make the one which discharged the fatal bullet. Now, while it is not identified to the exclusion of all other guns, it is a gun capable of firing those bullets. In addition to that, the defendant has been described and identified by two witnesses who saw him in the store and have identified him positively as the man dressed in a black coat of artificial fur, wearing a black or dark shirt and a green tie and was in the store immediately prior to the shooting and carrying the lamp in question. Now if the jury believes that line of testimony, they could be satisfied to the extent required by our law that the defendant was the man who committed those offenses which were without doubt committed. For these reasons, gentlemen, the Court overrules the motion of the defendant for judgment of acquittal on each of the following counts, 1, 2, 3, 4, 5 and 12 of

this indictment, and the docket entry will so show, Madam Clerk."

The positions of the contending forces were not significantly altered between the close of the State's case and the close of the whole case. The appellant essayed the bold gambit of establishing an alibi for himself without taking the stand in support thereof. He offered one key alibi witness and two peripheral ones. The key witness was an elderly female relative — variously described as his cousin, his aunt and his grandmother. The critical hours for the alibi were 1) the late morning of November 8, 1972, and 2) between 2 and 3 p.m. that same afternoon. The elderly relative had the appellant chopping wood for her from 11 a.m. until 3:45 p.m. on November 8. A lifelong friend and post-mistress had the appellant picking up a letter at about 4 p.m., a fact, even if true, of at best slight relevance. A 17-year-old girlfriend, who was "in love with" the married appellant, had him continuously on the telephone with her between 2:30 and 3 p.m. on November 8 from some unknown location.

The testimony of the key alibi witness — the elderly relative — was devastated by rebuttal testimony that she had told the police on November 11, 1972, that she had not seen the appellant "since he got married" — "for about two years." The defense credibility was compromised further by a statement given by the appellant to the police setting up the contrary alibi that he had been playing basketball all day at the Tacoma-Langley Community Center. At trial, however, that alternative alibi was effectively foreclosed by the testimony in chief of an assistant manager that nobody played basketball at the Tacoma-Langley Community Center at any time on November 8.

When, therefore, the motion for a judgment of acquittal was renewed at the close of the entire case, Judge Bowen did not retread the ground already trod:

"Very well, gentlemen, the Court considered this motion when it was originally submitted. We once again overrule the motion on the grounds which we

considered and discussed at the time the motion was originally submitted."

We see no merit in the appellant's contention that he was denied procedural due process. All of the State's evidence, which was legally sufficient to permit the case to go to the jury when the motion was first made and denied, was still in the case at the later juncture. Its sufficiency had not waned. The addition of alibi evidence could not alter that sufficiency, since the jury had the unfettered right to disbelieve totally alibi testimony. *Shipley v. State,* 220 Md. 463, 468, 154 A. 2d 708, 711; *Walters v. State,* 242 Md. 235, 238, 218 A. 2d 678; *Duffy v. State,* 243 Md. 425, 434, 221 A. 2d 653; *Logan v. State,* 1 Md. App. 213, 216, 228 A. 2d 837; *Nichols v. State,* 5 Md. App. 340, 351, 247 A. 2d 722. In terms of legal sufficiency, the situation simply had not changed between the end of the State's case and the end of the whole case. Moreover, the ultimate question is not whether Judge Bowen simply added an "amen" to his earlier ruling or whether he pondered anew, but rather whether the State's evidence was, in fact, legally sufficient to permit the case to go to the jury. We hold that it was so beyond cavil.

### The Burden of Proof as to Alibi

The appellant's second contention is that the trial judge erroneously instructed the jury that an alibi is an affirmative defense, requiring the appellant to prove the alibi by a preponderance of the evidence. The following instruction was given to the jury:

"Now, the defendant in this case. asserts the evidence of an alibi. Now you will understand, ladies and gentlemen, that an alibi is what we call an affirmative defense. It is of course a complete defense if you believe it. Obviously a person who is not at the scene could not complete the crime. We say it is an affirmative defense because this is the one time in this case where the defendant has the burden of proof. It is the only thing in the case as to which he has the burden of proof. On the defense of

alibi the defense has the responsibility to satisfy you by a fair preponderance of the evidence that he was not in fact in the store and in fact was somewhere else. Now evidence has been introduced tending to show that the defendant was not present at the time and at the place where these offenses were committed. The defendant may not be convicted of the offenses with which he is charged unless the state proves beyond a reasonable doubt that the defendant was present at the time and place where the offense was committed. If after full and fair consideration of all the facts and circumstances in the evidence you find that the defendant has satisfied the fair preponderance of the evidence concerning this man and that he was in fact somewhere else and not at the scene, then he must be acquitted."

Although the appellant made no objection to this instruction and is, therefore, foreclosed from assigning error as a matter of right, he relies upon Maryland Rule 756 g in urging us, in our discretion, to take cognizance of a plain error. In *Brown v. State*, 14 Md. App. 415, 287 A. 2d 62, Judge Powers analyzed our discretion under Rule 756 g and concluded that we may take cognizance of plain error where that error is one of commission rather than of mere omission. In the exercise of our discretion, we elect to consider the question because of our belief that the issue is one likely to recur. We hold that the instruction constituted a plain error of commission, although for reasons hereinafter to be discussed, we think the error was in this case harmless.

Although Maryland has never, in explicit terms, dealt with the question of whether alibi is an affirmative defense or spoken to the defendant's burden of proof vis-a-vis an alibi, the clear intimations of *Floyd v. State*, 205 Md. 573, 581, 109 A. 2d 729, are that the alibi simply erodes the State's proof of criminal agency:

"[A]ll the evidence in a criminal case is to be considered together, and the jury are not to weigh

merely the evidence relating to the alibi and determine from that alone whether they have a reasonable doubt of guilt. To warrant a conviction in a criminal case the charge must be proved beyond a reasonable doubt. *Wood v. State*, 192 Md. 643, 649, 65 A. 2d 316. If the jury, considering all the evidence, inculpatory and exculpatory, entertain a reasonable doubt of the defendant's participation in the crime, they should acquit him. Thus a defendant is entitled to acquittal if the alibi testimony, taken into consideration with all the other evidence in the case, raises a reasonable doubt of guilt."

See also *Basoff v. State*, 208 Md. 643, 655, 119 A. 2d 917.

Although there is some precedent for speaking of alibi as "an affirmative defense," it is the broad consensus of authority that such a reference is correct only in the sense that it places a burden on the defendant to go forward with evidence which is peculiarly within his province to produce. That burden of going forward with the evidence should never be confused with a burden of proof, which in a criminal case does not shift away from the State. Even the burden of going forward with the evidence, moreover, is only to the extent necessary to negative the State's proof beyond a reasonable doubt of one of its critical elements. In 1 *Wharton's Criminal Evidence*, § 23, "Alibi," the point is made very clear, at pp. 38-39:

"There is some conflict as to the burden and degree of proof of the defense of alibi. Some of this conflict may undoubtedly be explained by a failure to recognize the distinction between the burden of proof and the burden of going forward with the evidence. Because the burden of presenting evidence of a fact peculiarly within the defendant's knowledge may be placed upon him, it is proper to hold that the defendant must in the first instance go forward with evidence in support of his claim of alibi. The matter is to a large degree academic

because, in spite of variant forms of expression, it is generally held that the ultimate burden of proving the presence of the defendant at the scene of the crime at the time of its commission is upon the prosecution, rather than that the ultimate burden is upon the defendant to show that he was at another place. The defendant may succeed simply by raising a reasonable doubt of his presence at the scene of the crime at the time it was committed. It is not necessary for the defendant to prove his alibi beyond a reasonable doubt, nor by a preponderance of the evidence."

We think the sound view to be that an alibi is not an affirmative defense, placing any burden upon a defendant beyond the self-evident one of attempting to erode the State's proof to a point where it no longer convinces the fact finder beyond a reasonable doubt. Proof of an alibi, like any other defense testimony, is simply a means of controverting the State's effort to establish criminal agency. The general state of the law, and in our judgment the correct state of the law, is well expressed in 29 Am. Jur. 2d, *Evidence*, § 157, "Defensive matters — Alibi," at 188-189:

"In most states it is the rule that in criminal prosecution the defendant does not have the burden of proving an alibi upon which he relies as a defense. The courts which take this position do so on the theory that an alibi is not an affirmative defense and that evidence to prove an alibi is not to be treated as proof offered to establish an independent affirmative matter set up by the defendant, but mere evidence tending to disprove one of the essential factors in the prosecution — namely, the presence of the accused at the place and time of the alleged crime. Since, under this view, an alibi is only a denial of any connection with the crime, it must follow that if proof adduced raises a reasonable doubt of defendant's guilt, either by itself or in conjunction with all other facts of the case, the defendant must be acquitted."

That same section goes on to explain, at 189-190, how states which seem at first glance to hold otherwise actually are not taking a different position, once the appropriately limited connotations are placed on the phrases "affirmative defense" and "burden of proof" as used in the actual contexts of the cases:

> "In some states the rule is stated that the burden of proof of an alibi is on the defendant. But while some courts in applying this rule have stated flatly that an alibi is an independent affirmative defense to be proved by the defendant, for the most part the courts mean only that it is the duty of the defendant to go forward with the evidence respecting an alibi if he relies upon this defense, so as to raise at least a reasonable doubt of his presence at the time and place of the commission of the alleged crime, and that the rule does not dispense with the necessity of the prosecution proving, where it is an essential part of the prosecution's case, the actual presence of the defendant at the time and place where the crime was committed. Thus, it has been said that to say that the burden is upon the defendant to establish an alibi can be accurate only if the term 'burden' is used in the sense of the requirement of going forward with the evidence, and if that is all that is intended, any reference in an instruction to a burden upon the defendant is improper because it is never necessary or appropriate to mention to a jury the burden of going forward with the evidence."

To a similar effect, see Annotation, "Burden and degree of proof as to alibi," 29 A.L.R. 1127 (1924), supplemented by Annotation, 67 A.L.R. 138 (1930), and by 124 A.L.R. 471 (1940).

The treatises on evidence are in agreement. McCormick, *Law of Evidence*, states, at 683:

> "There are certain excuses or justifications allowed to the defendant, which although proveable

for the most part under the plea of not guilty, are spoken of for some purposes as 'affirmative defenses.' Among these are self-defence, duress, insanity, intoxication and claims that the accused is within an exception or proviso in the statute defining the crime. Some courts have even so classified the defence of alibi, though analytically it seems a mere form of denial of participation in the criminal act."

9 *Wigmore on Evidence* (3rd Ed. 1940), § 2512, "Crimes: (3) Self-defence, Alibi, etc.," says at p. 415, "It is generally conceded that the accused does not have the ultimate burden of proving an *alibi*." And see the plethora of cases there cited.

In *Stump v. Bennett*, 398 F. 2d 111 (8th Cir. 1968), the court was reviewing a murder conviction coming out of Iowa, in a case where an instruction had been given almost identical with the one at bar. The Iowa trial court had instructed the jury, in part, as follows:

" * * * before you can acquit the defendant by reason of this defense [alibi] you must find that he has established it by a preponderance or greater weight of the evidence bearing upon it."

The court first of all summarized the general state of the law on this subject, at 114-115:

"Iowa is one of only two states which now require a defendant to assume the burden of persuasion by a preponderance of evidence in establishing an alibi. Six other states have permitted instructions which require a defendant to present sufficient evidence of alibi to establish in the minds of the jurors a reasonable doubt of his guilt, but these states do not at any time shift the burden of persuasion as is done under the Iowa rule. Analytically, these states simply shift to the defendant the burden of going forward with the evidence as to the alibi itself. All of the seven United States Courts of Appeals that have considered the issue, including this Circuit,

agree that in a federal prosecution the burden of persuasion of an alibi defense may not be shifted to the defendant. . . . And even the Iowa Supreme Court subsequent to the *Stump* case expressed doubt about future applications of the rule. . . . But neither polling other states' positions nor comparing Iowa law with federal procedure is a conclusive ground for a finding on constitutional infirmity. Such weight of authority guides us at most to a 'consideration' of whether the rule 'offends' principles so fundamental as to be within constitutional protection." (citations omitted)

The Eighth Circuit then proceeded to give its reasons why the instruction offended the due process clause. It pointed out initially that the placing of the burden of proof upon the defendant rested exclusively upon the infirm premise that "alibi" is an affirmative defense. It said, at 115-116:

"The original premise behind placing the burden of proof upon the defendant is that 'alibi' is an affirmative defense. . . . This view has now been rejected by almost every state as well as by all federal courts which have had the proposition before them. . . . In asserting alibi the defendant simply denies the possibility of his having committed the crime by reason of being elsewhere when it was committed, whereas an affirmative defense generally applies to justification for his admitted participation in the act itself." (citations omitted)

The court then pointed out the burden on a defendant to prove his alibi is on an inevitable collision course with the burden on the state to prove a defendant's criminal agency, and that two such contradictory burdens cannot help but generate jury confusion. It said, at 116:

"The instruction itself is inconsistent and confusing, as is pointed out by the federal district court below. The jury is told that before it can

acquit the defendant by reason of this defense the defendant must establish it by the preponderance of evidence. Yet the jury is also told that if *any* evidence creates a reasonable doubt as to the crime as a whole, then it can return a verdict of not guilty. This court, of course, has consistently adhered to the general rule that instructions are to be viewed in their entirety. . . . But even when so viewed, the presence of serious confusion here as to burden of proof seems inescapable. If we presume, as we must, that the jury follows the court's instructions, which instruction is the jury to follow? " (citations omitted)

The entire issue was perhaps placed in best perspective by Chief Justice Walter Schaefer in *People v. Pearson*, 19 Ill. 2d 609, 169 N.E.2d 252 (1960), at 169 N.E.2d 255:

"In part, the extraordinary difficulties that have arisen with respect to instructions concerning alibi stem from the fact that the defense of alibi has often been spoken of as an affirmative defense. . . . Logically, proof of an alibi is not proof of an affirmative defense because in order to establish its case the prosecution must show that the defendant was present at the scene of the crime, and evidence that the defendant was elsewhere is only one method of negativing the prosecution's case. So where an instruction has unequivocally placed upon a defendant the burden of establishing an alibi, the conviction has been reversed. . . .

To say that the burden is upon the defendant to establish an alibi can be accurate only if the term 'burden' is used in the sense of the requirement of going forward with evidence. But if that is all that is intended, any reference in an instruction to a burden upon the defendant is improper because it is never necessary or appropriate to mention to a jury the burden of going forward with the evidence. Quite apart from the matter of instructions to the

jury, to think or speak of alibi in terms of an affirmative defense can only cause confusion. The ease with which alibi testimony can be fabricated, and its obvious capacity to surprise, may make appropriate some advance notice of the defense, but that is a different matter." (citations omitted)

## Harmless Error

We belabor the point that the instruction here was plain error, but only to give future guidance. In the case at bar, we are persuaded beyond a reasonable doubt that the error was harmless. *Chapman v. California,* 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967). We are convinced that the instruction given on the question of alibi, and the testimony offered on the question of alibi, had no bearing whatsoever on the jury's verdict. As already discussed, the appellant himself did not testify as to his alibi, and had already given a statement to the police squarely contradicting the alibi (which contradiction was, also, effectively refuted). The key alibi witness — a relative — was squarely contradicted by rebuttal testimony. The evidence of the appellant's criminal agency, on the other hand, was massive and overwhelming.

Robert Loewy, who was shot twice and left permanently paralyzed, had his possible in-court identification suppressed. He testified unequivocably, however, that he had spent the better part of fifteen minutes in the late morning making the sale of a lamp to the ultimate gunman. He identified the lamp that was sold and then returned by the same man several hours later, immediately prior to the shooting. He identified a sales ticket which he had written for the man under the name "Jeffrey Robinson" but which was signed in the name of "Ronald Robinson." He described the assailant as dressed in a dark black imitation fur coat, a black shirt with a green tie and grey striped pants. When the same person came back at between 2 and 3 p.m. to return the lamp, he had another extended conversation with Mr. Loewy. When the vendee suddenly turned violent, Mr. Loewy observed him shoot and kill fellow employee Anthony Viola, shoot and kill fellow employee Mark Bressman, turn

and shoot Mr. Loewy once in the neck, order Mr. Loewy to open the cash register, take a number of bills from the cash register, and then shoot Mr. Loewy again in the middle of the rib cage. Mr. Loewy described the handgun used as a long-barreled revolver.

Richard Marcus, a student and part-time employee, observed the shooting. He identified the appellant as the gunman. He had observed the appellant earlier discussing the return of a lamp with Mr. Loewy. He observed him on and off for approximately fifteen minutes and, at one point, was within five feet of him.

Staff Sergeant Claude Jefferson, a neuropsychiatric supervisor at Walter Reed Hospital, was a customer in the store immediately prior to the shooting. He identified the appellant as the man who came into the store carrying a lamp and looking "worried or concerned."

The appellant in his statement to the police denied ever having been in the Lenox Furniture Store, which was the scene of the crime. Recovered from the appellant's home, after his arrest, was a black fake fur coat, a black shirt and two green neckties, matching the description of the assailant's clothing. When the appellant was arrested, a long-barreled .22 caliber revolver, fully loaded, was taken from the trunk of his automobile. The appellant acknowledged ownership of the gun continuously for the preceding two years. The .22 caliber bullets taken from the bodies of Mr. Bressman and Mr. Viola were too mutilated for positive identification ballistically, but the ballistics experts were able to testify that they were compatible in all ascertainable regards with the appellant's gun and could well have been fired from it. An F.B.I. handwriting expert testified that the signature "Ronald Robinson" on the sales slip for the lamp was written by the appellant. An F.B.I. fingerprint expert testified that the appellant's fingerprints were on the lamp in question and were also on a stereo set located in the Lenox Furniture Store.

In view of the overwhelming evidence of the appellant's guilt, we are persuaded beyond all doubt that the feeble,

contradictory and contradicted effort to assert an alibi could have had no conceivable bearing on the jury's ultimate verdicts, whatever the instruction as to the alibi might have been.

*Judgments affirmed.*