56 A.3d 560

David Calvin MINES

v.

STATE of Maryland.

No. 2681, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Nov. 27, 2012.

Ben Miller (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Gary E. O'Connor (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: MEREDITH, WOODWARD and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

J. FREDERICK SHARER (Retired, Specially Assigned), J.

After a jury trial in the Circuit Court for Anne Arundel County, David Calvin Mines, appellant, was convicted of attempted armed robbery, attempted robbery, second-degree assault, and openly wearing and carrying a deadly and dangerous weapon with intent to injure another.[1]

Appellant presents the following four questions for our consideration:

1. Did the circuit court err in permitting irrelevant and highly prejudicial testimony?

2. Did the circuit court err in permitting the prosecutor to improperly shift the burden of proof during the cross-examination of appellant?

3. Did the circuit court err in permitting testimony as to the victim's degree of confidence in his identification of appellant as the perpetrator?

4. Did the circuit court err in permitting the prosecutor to make improper and prejudicial comments during closing and rebuttal argument?

For the reasons set forth below, we shall affirm.

---

**1.** The court sentenced appellant to 15 years incarceration, with all but five years suspended, for attempted armed robbery, and a concurrent term of three years for openly wearing and carrying a deadly and dangerous weapon. The remaining convictions were merged for sentencing purposes.

## FACTUAL BACKGROUND

Although appellant does not challenge the sufficiency of the evidence, a brief review of the facts is helpful for placing the issues presented in context. In summary, the jury heard the following:

On March 17, 2010, Jesus Pinones[2] was working as a delivery driver for Domino's Pizza. At about 8:20 p.m., he went to an address in Maryland City, and delivered a pizza. As he was returning to his car, he heard someone say "hey, you, . . . stop." Pinones entered his car on the passenger side because he had problems with the driver's side door. As he was getting ready to lock the passenger side door, a black male with dreadlocks carrying a knife approached and opened slightly the passenger side door. Pinones was able to get the door closed and locked, but then the man "started scraping [the] glass with his knife," which had a four to six-inch blade. The man told Pinones, "to get out and give him the money otherwise he was going to stab [him]." Pinones reached for his cell phone, which was under his seat and, once he obtained it, he noticed that the man had started to run away.

Across the street, Pinones saw a white male wearing a baseball cap and a gray hoodie, and a black male, both of whom started running away with the man who had tried to rob him. Pinones drove after the men for about a block before he was "intercepted by Anne Arundel County Police." Pinones told the police the direction in which the men had run.

Several Anne Arundel County police officers responded to the call for the attempted robbery of Pinones. Ultimately, the police detained, and arrested, appellant and two other males. A search of the three disclosed a folding pocket knife in the possession of Xavier Howell. No knife was found on appellant.

---

2. Jesus Pinones is also known as Jesus Arturo Pinones Avila and Jesus Arturo Avila Pinones, but he testified that he uses Pinones as his last name, and we shall refer to him that way throughout this opinion.

Appellant testified in his own defense. He told the jury that on the evening of the attempted robbery of Pinones, he was playing basketball with several others and, thereafter, he drove his girlfriend, their child, and others home. Appellant and some friends then drove to another location to visit with other friends, including Tony Ash and David McCowski. While at that location, Corporal Rayburn Smallwood approached and requested identification. All present complied with his request. Subsequently, another officer arrived, presumably with Pinones in his police car, and appellant and others were placed in front of the headlights of the cruiser. Thereafter, appellant was taken into custody.

Appellant called several defense witnesses. The most significant, relevant to the issues presented in this appeal, was Deontre Rose Lyons.

Lyons testified that in the days following the attempted robbery, he told police that he had approached a pizza delivery driver with the intent to rob him, but that he abandoned that plan when the driver jumped into his car and drove away. The police told him he could get into trouble if he was lying, and Lyons recanted. Lyons testified that he only went to the police initially because appellant told him that if he turned himself in, he would only get "like probation or something, house arrest," because he was still a minor. In addition, Laura, a friend of appellant's girlfriend, Brittney, told him that if he did not turn himself in, "they was going to get somebody to put a hit out on [him]." Lyons testified that he did not know anything about the robbery.

Daniel Adams testified that on the night of the robbery, he was playing basketball with appellant, Lyons, and others. When they were finished, appellant and two others left in a car. Adams, Lyons, and others began walking home when they saw a pizza delivery person. Someone in the group suggested robbing the man. Everyone in the group kept walking, but Lyons went across the street. About 30 seconds to a minute later, Lyons returned to the group and said that

he had tried unsuccessfully to rob the pizza delivery man, and had tried pulling on the man's car door, but it was locked.

Jonathan Whalen testified that he was playing basketball with appellant and others on the night of the robbery. After the game broke up, he walked with a group that included Lyons. Whalen saw a pizza delivery person and Lyons "had an idea to rob" him, but the group "wanted nothing to deal with it." Whalen watched as Lyons pulled a knife out of his pocket, walked across the street, and approached the pizza delivery man. Lyons then returned to the group and "said that he had attempted to rob the pizza guy, but he got nothing out of it because he got into his car and locked the doors." Whalen admitted on cross-examination that he gave his statement to the police about eight days after the robbery had occurred, and after he had talked to appellant's girlfriend, Brittney.

In rebuttal, the State called Anne Arundel County Police Officer Megan Paulits, who testified that four days after the attempted robbery, Daniel Adams came to the police station to speak with her. Adams told Paulits that he saw Lyons walk up to the pizza delivery person and, when he returned, Lyons said that he had attempted to rob the delivery man. Paulits wrote a report of her conversation with Adams and passed it along to Detective John Dutton.

Dutton testified that appellant was arrested and charged on a Friday night. The following Monday, he began receiving calls from various friends and family members of appellant and the other co-defendants who were arrested with him, all saying that "the wrong man has been locked up" and that they had information about "who really did this crime."

To follow up, Dutton interviewed numerous individuals, and went back to the victim, Pinones, and interviewed him again. Dutton called Adams, who had told him that he heard Lyons say he was going to rob the pizza delivery man, and saw him walk up to the delivery man. Thereafter, Lyons returned to the group and told them he had attempted to rob the delivery

man. In subsequent discussions, appellant's colleagues continued to implicate Lyons.

Dutton spoke with Lyons, who reiterated that he had planned to rob the pizza delivery man, but abandoned the plan. Lyons denied ever displaying a knife and denied ever having any interaction or discussion with the delivery man. When Dutton told Lyons that he was facing four felonies, Lyons became flustered, and said that Brittney had talked him into going to the police and he did not think he would be in any trouble because he was only 17 years old.

After meeting with Lyons, Dutton again interviewed Pinones, who reiterated that the person who attempted to rob him

> had dreadlocks and the person who he saw five minutes after the robbery that was shown to him by Officer Smallwood and Officer Williams, he was a hundred percent positive that the Defendant who is-who's being shown at the time was the man who robbed him, through face, through dreadlocks, and through the clothes he was wearing.

## DISCUSSION

### 1. Prejudicial Testimony

Appellant first contends that the circuit court erred in permitting irrelevant and highly prejudicial testimony by Deontre Lyons that "some guys" had broken his jaw and "it was wired shut." At trial, Lyons gave the following testimony, which we set forth at length in order to provide context:

> [PROSECUTOR]: So why did you go on the 18th of March and tell the police that you had walked up to a pizza delivery guy and that you—and had the intent to rob him?
>
> [LYONS]: Because they told me if I didn't they was going to get somebody to kill me.
>
> Q. Were you afraid?
>
> A. Yes, I was.
>
> Q. Have you moved from your home? Have you—
>
> A. Yes.

Q. —moved from your address?

A. Yes.

Q. Because you're afraid?

A. Yes.

Q. Have you been assaulted at all since this case by anybody?

A. Yes.

Q. What happened to you?

A. Well, I was in my friend, Terrell's house, and I was just about to go home and like ten minutes after that some guys came up and broke my jaw.

Q. When did that happen?

A. This happened on the 28th of November, I think.

Q. You mean October because its November—

A. Yeah. Yeah. October. October.

Q. So is your jaw wired shut right now?

A. Yes, ma'am.

Q. And do you know why these guys walked up to you and beat you up and broke your jaw?

A. I don't know.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to that entire line of questioning as irrelevant and ask that it be stricken.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Note my exception.

THE COURT: You don't need to note exceptions. You know that.

[Prosecutor]: Were you afraid and that was your motivation to go and tell the police that you had been involved in a robbery?

[LYONS]: Yes, ma'am.

Q. Did you ever see the pizza guy that we're talking about that night—

A. No.

Q. —do you remember? You have to speak yes or no.

A. No, ma'am.

Q. Okay. Did you ever have a knife that night?

A. No, ma'am.

Q. Now you don't know anything about the robbery at all. Is that right?

A. Yes, ma'am.

Q. Are you still afraid today?

A. A little bit. Yeah.

Q. Are you afraid of David Mines and his girlfriend?

A. Yeah. A little bit.

Appellant argues that there was no testimony to connect the broken jaw to appellant or the attempted robbery of Pinones. Thus, he argues, Lyons's testimony "left the clear impression in the jury's [sic] minds that the broken jaw was related to this case and was done at appellant's direction or for his benefit." In support of this argument, appellant points to the fact that Lyons testified that he did not know who broke his jaw and did not know why he was hit.

We note, preliminarily, that appellant specifically objected to Lyons's testimony on the ground that it was irrelevant, but at no time did he argue below that the testimony was prejudicial. As a result, the argument that Lyons's testimony was prejudicial was not preserved for our consideration. Md. Rule 8–131. Even if the issue had been preserved, however, reversal would not be required.

The admissibility of evidence is left to the sound discretion of the trial court. Md. Rule 5–104(a)("Preliminary questions concerning ... the admissibility of evidence shall be determined by the court...."); *State v. Simms*, 420 Md. 705, 724–25, 25 A.3d 144 (2011)(and cases cited therein); *Hendrix v. Burns*, 205 Md.App. 1, 29, 43 A.3d 415 (2012)("The decision whether to allow or preclude the admission of evidence is generally committed to the sound discretion of the trial court."). We will not disturb a trial court's evidentiary ruling unless " 'the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse

of discretion.' " *Decker v. State,* 408 Md. 631, 649, 971 A.2d 268 (2009)(quoting *Merzbacher v. State,* 346 Md. 391, 405, 697 A.2d 432 (1997)). An abuse of discretion occurs when a decision is " 'well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.' " *Gray v. State,* 388 Md. 366, 383–84, 879 A.2d 1064 (2005)(quoting *Dehn v. Edgecombe,* 384 Md. 606, 628, 865 A.2d 603 (2005)).

Maryland Rule 5–401 defines relevant evidence as follows:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

As a general rule, relevant evidence is admissible while irrelevant evidence is not admissible. Md. Rule 5–402.[3]

�merck Lyons's testimony about why his jaw was wired shut was relevant. The jury was instructed that one of the factors to be considered in evaluating a witness's credibility is "the witness's behavior on the stand and manner of testifying." Before Lyons testified, the prosecutor advised the judge that "his jaw is wired shut. So if you think that he is talking weird, it's because of that, his jaw." Lyons's testimony about having his jaw wired shut provided the jurors with an explanation for his manner of speaking.

Moreover, as the above-quoted testimony reveals, Lyons did not know who had beaten him or why he had had his jaw broken. As a result, it could be just as reasonably inferred that neither appellant nor his colleagues, were responsible for the beating, and Lyons's testimony would not be prejudicial. We need not resolve this issue on that ground, however, because even if Lyons's testimony was erroneously admitted, it was harmless beyond a reasonable doubt.

---

3. Maryland Rule 5–402 provides:

Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. Evidence that is not relevant is not admissible.

Lyons gave other testimony, that was not objected to, about specific threats that were attributed to or linked to appellant. For example, Lyons told Detective Dutton that Brittney's friend, Laura, told him that if he did not turn himself in, "they was going to get somebody to put a hit out on me." He also testified, without objection, that appellant told him to turn himself in because he was still a minor and would "[p]robably get like probation or something, house arrest." Finally, Lyons testified without objection, that he was still a "little bit" afraid of appellant and his girlfriend. In light of this unobjected-to testimony, any error in admitting Lyons's testimony that his jaw had been broken was harmless beyond a reasonable doubt.

## 2. Shifting the Burden of Proof

■ Appellant next contends that the trial court erred in permitting the prosecutor to improperly shift the burden of proof during cross-examination of appellant, by asking appellant about what he was doing in the two hours between when he stopped playing basketball and when he was stopped by the police. The following colloquy occurred:

[PROSECUTOR]: Okay. What were you doing for those two hours?

[APPELLANT]: Like I said, we dropped my girl and her friend off at the house. We went to McDonald's, got something to eat, and then we came back to Federalsburg to talk to my friend in the driveway, so we was just standing in the driveway talking.

Q. What's that friend's name in the driveway?

A. His friend—his name is actually Tony.

Q. Okay. Tony what?

A. Ash.

Q. So Tony Ash can account for your whereabouts during the time of the crime, can't he?

A. Yes.

Q. But he's not here to testify, is he?

[DEFENSE COUNSEL]: Your Honor, I'm going to object.

THE COURT: Overruled.

[PROSECUTOR]: And this neighbor, Mr. McCowski, he could also testify [sic] your whereabouts at the time of the crime, but he's not here either, is he?

[DEFENSE COUNSEL]: I'm object—

[APPELLANT]: He was here yesterday.

[DEFENSE COUNSEL]: Objection to that.

THE COURT: Overruled.

[PROSECUTOR]: And your baby's mother, she's not testifying about where you were in the minutes before the crime as well?

[APPELLANT]: I mean, she could. Yeah.

[DEFENSE COUNSEL]: Again, objection.

THE COURT: Overruled.

Appellant argues that, in asking those questions, the prosecutor "sent a message to the jury that it was appellant's responsibility to secure the presence of witnesses at trial," and thereby improperly shifted the burden of proof from the State to appellant.

The issue again arose as a result of the State's closing arguments. Appellant contends that the prosecutor's reference, in closing, to appellant's failure to call certain witnesses amounted to a "trespass upon [his] Constitutional rights," citing *Wise v. State*, 132 Md.App. 127, 132, 751 A.2d 24 (2000).

In closing, the prosecutor told the jury:

When [appellant] testified he told you something very interesting. He told you it was two hours between when he played basketball and when he was arrested, and all he could say was that he went to McDonald's and then hung out outside of Horsehead in Federalsburg. He has no other human being and he listed all of his friends who would account for his whereabouts. None of those people have been called to testify.

And I say that because he brought that out. He said he was with his girlfriend. He was with his girlfriend's friend. He was outside the neighbor's house at Federalsburg and

Horsehead talking to that man for some period of time, and then he talked too about someone's uncle or his girlfriend's friend's uncle who was across the street and came over. So at one point I asked him, okay. At least four to five people knew what you were doing in that two-hour period and knew what you do and did in the five or ten minutes before the police came and knew what you were doing and could say that you weren't the person robbing, and none of those people were called as witnesses. So when you go back to the jury room, you can think about that. The State doesn't know who those people are. Those are [appellant's] friends and witnesses.

 We are persuaded that neither the prosecutor's cross-examination of appellant, nor the comments in closing arguments, impaired his Fifth Amendment rights, or could be construed as an improper shifting of the burden of proof.[4] We first explain that "[m]anaging the scope of cross-examination is a matter that falls within the sound discretion of the trial court." *Simmons v. State,* 392 Md. 279, 296, 896 A.2d 1023 (2006). We will not disturb such a ruling absent a showing of prejudicial abuse of discretion. *Fleming v. Prince George's County,* 277 Md. 655, 679, 358 A.2d 892 (1976).

In support of his argument, appellant directs our attention to *Robinson v. State,* 20 Md.App. 450, 316 A.2d 268 (1974); *Woodland v. State,* 62 Md.App. 503, 490 A.2d 286 (1985); and, *Wise v. State,* 132 Md.App. 127, 751 A.2d 24 (2000). In our view, those cases do not directly address the issue presented here.

In *Robinson,* the defendant did not testify in his own defense, and the trial judge erroneously instructed the jury that an alibi is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. *Robinson,* 20 Md.App. at 455, 316 A.2d 268. On appeal, we recognized

---

4. Defense counsel timely objected to the prosecutor's questions on cross-examination. No objection, however, was made to the prosecutor's comments in closing and rebuttal.

the error, and acknowledged that an accused does not have the ultimate burden of proving an alibi. *Id.* at 461–64, 316 A.2d 268. We held, however, that the error in that case was harmless beyond a reasonable doubt. *Id.*

In *Woodland*, during voir dire of prospective jurors, the court identified, from a witness list provided by defense counsel, two individuals as potential character witnesses in the case, but neither witness was called by the defendant to testify at the trial. *Woodland*, 62 Md.App. at 505, 490 A.2d 286. Woodland testified in his own defense and denied any involvement in the crime. *Id.* On cross-examination, the prosecutor developed the name Abdula Mateen Matuking, a friend of Woodland's, who was incarcerated at the time of trial and was not called as a witness by the defense. *Id.* at 506, 490 A.2d 286. During rebuttal closing testimony, the prosecutor argued on several occasions that neither of the witnesses identified during voir dire, nor Matuking, had been called to testify. *Id.* at 506–07, 490 A.2d 286. Woodland's objections were overruled. After the court had instructed the jury, defense counsel requested that the court further instruct the jury that the defendant had no obligation to produce any evidence, but the court declined to give such an instruction. *Id.* at 508, 490 A.2d 286.

Woodland argued on appeal that the trial court erred in allowing the State to argue the inference to be drawn from a missing witness when the State was not entitled to a missing witness instruction, and that that error, coupled with the court's failure to give appellant's requested jury instruction, shifted the burden of proof from the State to Woodland. *Id.* at 509, 490 A.2d 286. After reviewing the circumstances in which the missing witness rule[5] applies, we concluded, *inter*

5. The failure to call a material witness raises a presumption or inference that the testimony of such person would be unfavorable to the party failing to call the witness, but there is no presumption or inference when the witness is not available, or when the witness's testimony is unimportant or cumulative, or the witness is equally available to both sides. *Christensen v. State*, 274 Md. 133, 134, 333 A.2d 45 (1975)(citing 1 Underhill, *Criminal Evidence*, § 45 (Rev. 6th ed. P. Herrick 1973)).

*alia,* that even if the missing witness rule applied to character witnesses, the testimony of the two character witnesses would have been cumulative to the testimony of other character witnesses who testified at trial. *Id.* at 511, 490 A.2d 286. With respect to Matuking, we concluded that he was not a material witness whose testimony would elucidate the transaction and, as a result, the missing witness rule did not apply, the prosecution was not entitled to a missing witness instruction, and the prosecutor's argument was improper. *Id.* at 512, 514, 490 A.2d 286. We then considered whether the error was harmless, and concluded that the prosecutor's improper arguments, made during rebuttal closing argument, when Woodland had no opportunity to respond, had the effect of shifting the burden of proof to appellant. *Id.* at 516–17, 490 A.2d 286. As a result, it could not be said that the trial court's failure to give the requested instruction was harmless beyond a reasonable doubt. *Id.*

In *Wise,* the prosecutor made several statements during closing and rebuttal argument pertaining to the defendant's failure to produce witnesses in his defense or to testify in his own defense. *Wise,* 132 Md.App. at 139–40, 751 A.2d 24. Wise argued on appeal that these remarks shifted the burden of proof. In considering Wise's argument, we recognized a development in the law pertaining to a prosecutor's comment on a defendant's failure to testify:

"In view of his constitutional privilege, no inference is raised against a defendant who does not testify, but if he does become a witness and then fails to explain away incriminating circumstances, such failure may be taken against him." *Id.* In *Woodland,* we stated that

the missing witness rule applies where (1) there is a witness, (2) who is peculiarly available to one side and not the other, (3) whose testimony is important and non-cumulative and will elucidate the transaction, and (4) who is not called to testify. The inference to be drawn from the failure to call a witness will arise only if the relationship between the defendant and the witness is one of interest or affection. The inference will not arise if the relationship is that of accomplice/defendant, although the defendant's conviction will not be set aside if the prosecution argues the rule and no request for a reverse missing witness instruction is made.

*Woodland,* 62 Md.App. at 510–11, 490 A.2d 286 (internal citations omitted).

In 1965, the United States Supreme Court condemned a prosecutor's comment on a defendant's failure to testify and held that, in doing so, the prosecutor violated a right protected by the Fifth Amendment. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).... However, the courts since *Griffin* have distinguished those comments by prosecutors about the failure to offer evidence regarding matters for which the defendant is the only witness and those for which the evidence is available from other defense witnesses as well. The decisions, in other words, have distinguished between those comments about a defendant's failure to explain by testifying and those comments about the failure of the defendant to explain through other witnesses. *U.S. v. Mayans,* 17 F.3d 1174, 1185 (9th Cir.1994).

*Id.* at 142–43, 751 A.2d 24.

In *Wise,* defense counsel claimed during opening statement that he would produce certain evidence, but failed to do so at trial. The prosecutor's closing argument drew "the jury's attention to the fact that defense counsel had failed to fulfill his prediction in opening statement as to what he would develop at trial." *Id.* at 145, 751 A.2d 24. Wise argued that the prosecutor's comments went further and implied that the defendant had a duty to present evidence. In holding that the trial court did not err in failing to sustain Wise's objections to the prosecutor's comments, we wrote:

It is clear that Maryland holds such remarks to be unfair comment and does not permit the prosecutor to point out the absence of defense witnesses who, during the selection of the jury, the defense indicated might be called as witnesses. Said another way, Maryland prosecutors, in closing argument, may not routinely draw the jury's attention to the failure of the defendant to call witnesses, because the argument shifts the burden of proof. On the other hand, a defense attorney's promising in opening statement that the defendant will produce evidence and thereafter failing to do so does open the door to the fair comment upon that failure,

even to the extent of incidentally drawing attention to the defendant's exercising a constitutional right not to testify.

Such a contradistinction rationally distinguishes between the lack of prediction attendant to listing names in *voir dire* and the calculated injection of unsupported facts before a jury that have not been filtered through the rules of evidence or withstood the test of cross-examination. Witness lists furnished to the court and then announced to the jury panel do not carry any promise as to content of testimony or prediction as to what will develop. Opening statements, on the other hand, usually do involve predictions about what the jury will hear and can be the means by which an unscrupulous or well intentioned advocate can submit facts to the jury that can have a sizeable influence upon the outcome of the trial. We hold that the prosecutor's comments here were a reasoned and justified response to the excesses of the defendant's opening statement and as such did not violate the defendant's constitutional rights.

*Id.* at 148–49, 751 A.2d 24.

Neither *Robinson, Woodland,* nor *Wise* involved the scenario presented in the instant case. Here, the prosecutor's questions were directed to appellant after he took the stand, and involved whether there was support for factual claims raised by appellant's testimony. Courts in other jurisdictions have considered whether, in cases where the defendant testified, comments made by the prosecutor about the lack of corroborating evidence constituted improper burden shifting. In *United States v. Cabrera,* 201 F.3d 1243 (9th Cir.2000), the Ninth Circuit Court of Appeals rejected a claim that the prosecutor improperly shifted the burden of proof or persuasion by arguing that the defendant failed to call witnesses to corroborate his testimony. The Court held that

[a] prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify. *See United States v. Williams,* 990 F.2d 507, 510 (9th Cir.1993); *see also United*

*States v. Vaandering*, 50 F.3d 696, 701–02 (9th Cir.1995)(holding that a prosecutor's comments highlighting the weaknesses in the defendant's case did not shift the burden of proof because the prosecutor did not comment on the defendant's failure to testify, and expressly told the jury that the government bore the burden of proof)(citing *United States v. Mares*, 940 F.2d 455, 461 (9th Cir.1991)). *Id.* at 1250.

The Court held that Cabrera's Fifth Amendment rights were not implicated because he chose to testify in his own defense. *Id.* Other courts have come to the same conclusion. In *United States v. Boulerice*, 325 F.3d 75, 86–87 (1st Cir. 2003), the First Circuit Court of Appeals wrote:

While it is axiomatic that the prosecutor cannot comment on a defendant's failure to testify, *see Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), once a defendant has taken the stand in her own defense, the prosecutor is not precluded from impugning the defendant's credibility by commenting on her failure to produce any corroborating evidence. Other courts have come to the same conclusion. *See United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir.2000); *United States v. Bautista*, 23 F.3d 726, 733 (2d Cir.1994); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir.1988); *see also* 75A Am.Jur.2d Trial § 605 (2002)("[A] prosecutor may properly comment on the defendant's failure to present exculpatory evidence which would substantiate defendant's story as long as it does not constitute a comment on a defendant's silence.").

Similar holdings were made in *United States v. Schmitz*, 634 F.3d 1247, 1267 (11th Cir.2011)(questioning tested the plausibility of defendant's account and did not shift the burden of proof) and *United States v. Williams*, 990 F.2d 507, 510 (9th Cir.1993)(defendant's Fifth Amendment right not to testify was not implicated by comments about his failure to call a witness because the defendant testified at trial). These holdings are consistent with 75 Am.Jur.2d Trial § 506 (2012), which provides, in part:

The rule forbidding any reference to a defendant's failure to take the stand in his or her defense does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. Consequently, a prosecutor may properly comment on the defendant's failure to present exculpatory evidence which would substantiate the defendant's story as long as it does not constitute a comment on the defendant's silence.

We find the reasoning employed in these cases to be sound, and adopt them in our resolution of this issue. Appellant maintained that he did not attempt to rob Pinones, but was playing basketball and later talking with friends when the police approached him. The questions the prosecutor asked of appellant on cross-examination related to potential fact witnesses who had been specifically referred to by appellant in his own testimony.

Unlike *Woodland,* where the issue was first raised in the prosecution's rebuttal closing, allowing Woodland no opportunity to reply, the issue of the fact witnesses in the instant case was raised by the prosecutor on cross-examination of appellant, so that appellant had the opportunity to respond.[6] We also think it significant that the witnesses who might have corroborated appellant's testimony were persons with whom he had a close relationship, e.g., his girlfriend (who was the mother of his child), his girlfriend's friend, and a neighbor.

For all of these reasons, we hold that the trial court did not abuse its discretion in permitting the State to cross-examine appellant about the potential fact witnesses. In the circumstances, where appellant testified in his own defense and, in his own testimony identified potential exculpatory witnesses, but called none of them to the stand, questions as to their absence did not violate appellant's Fifth Amendment rights,

---

6. The trial court specifically instructed the jury that the State had the burden of proof and appellant was "not required to prove his innocence."

and did not constitute improper burden shifting. We find no error in the court's ruling.

### 3. The Victim's Identification of Appellant

 Appellant's next contention is that the circuit court erred in permitting testimony as to Pinones's degree of confidence in his identification of appellant as the perpetrator.

During direct examination, Pinones was asked if he told the police "the degree of sureness" he had about his identification of the person who attempted to rob him. Pinones responded that he told the police he "was a hundred percent sure" that appellant was the man who tried to rob him. Appellant argues that because a witness's degree of confidence has no correlation to the witness's accuracy, it is not relevant and was unfairly prejudicial.

 Appellant did not object to Pinones's testimony, but asks us to exercise our discretion to grant plain error review. This we decline to do because there was no error, much less plain error, in admitting Pinones's testimony. A witness's degree of certainty is a proper consideration when evaluating his likelihood of misidentification. *See e.g., Neil v. Biggers,* 409 U.S. 188, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)(stating that factors to be considered in evaluating the likelihood of misidentification include "the level of certainty demonstrated by the witness at the confrontation"); *Jones v. State,* 395 Md. 97, 110 n. 8, 909 A.2d 650 (2006)(same); *James v. State,* 191 Md.App. 233, 253, 991 A.2d 122 (2010)(same); *Turner v. State,* 184 Md.App. 175, 182, 964 A.2d 695 (2009)(same).

With reliance on these authorities, we conclude that the trial court did not err in admitting Pinones's testimony because there was no error, plain or otherwise, in his expression of how certain he was about his identification of appellant as the man who tried to rob him.

### 4. The State's Closing Argument

Appellant's final contention is that the circuit court erred in permitting the prosecutor to make improper and prejudicial comments during closing and rebuttal argument.

■ Specifically, appellant complains that the prosecutor improperly (1) argued facts not in evidence by suggesting that appellant was somehow associated with Lyons's broken jaw; (2) argued that Lyons knew the victim followed in his car because that is what Daniel Adams told him to say; (3) argued in rebuttal argument that appellant failed to call anyone to testify about his whereabouts between the time he was playing basketball and the time of the crime; and (4) made a "golden rule" argument by asking the jurors to place themselves in the shoes of the victim. Appellant acknowledges that only the first of those contentions—pertaining to Lyons's broken jaw— was preserved for our consideration. Nevertheless, he asks us to exercise our discretion to grant plain error review with respect to the other three contentions, and argues that each improper comment must be considered for its cumulative effect. We decline the invitation to conduct plain error review, because such review is within our "unfettered discretion." *Morris v. State,* 153 Md.App. 480, 837 A.2d 248 (2003). Nonetheless, because appellant's contentions are substantially interrelated, and for completeness, we shall discuss the reasons why we find no error, plain or otherwise, and thus no merit in those contentions.

The scope of permissible closing argument was discussed by the Court of Appeals in *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974) as follows:

As to summation, it is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and such comment or argument is afforded a wide range. Counsel is free to use the testimony most favorable to his side of the argument to the jury, and the evidence may be examined, collated, sifted and treated in his own way.... Generally, counsel has the right to make any comment or argument that is warranted by the evidence proved or inferences therefrom; the prosecuting attorney is as free to comment legitimately and to speak fully, although harshly, on the accused's action and conduct if the evidence supports his

comments, as is accused's counsel to comment on the nature of the evidence and the character of witnesses which the prosecution produces.

*Wilhelm,* 272 Md. at 412, 326 A.2d 707 (citations omitted). *See also Degren v. State,* 352 Md. 400, 429, 722 A.2d 887 (1999)("attorneys are afforded great leeway in presenting closing arguments to the jury").

What exceeds the limits of permissible comment or argument by counsel depends on the facts of each case, *Smith and Mack v. State,* 388 Md. 468, 488, 880 A.2d 288 (2005), and we shall not disturb a trial court's judgment absent a clear abuse of discretion by the trial court of a character likely to have injured the complaining party. *Spain v. State,* 386 Md. 145, 158–59, 872 A.2d 25 (2005); *Grandison v. State,* 341 Md. 175, 225, 670 A.2d 398 (1995). There are, however, certain boundaries that counsel may not exceed in a closing argument. Counsel may not "comment upon facts not in evidence or . . . state what he or she would have proven." *Smith and Mack,* 388 Md. at 488, 880 A.2d 288. Nor may counsel appeal to the prejudices or passions of the jurors, *Wood v. State,* 192 Md. 643, 652, 65 A.2d 316 (1949), or invite the jurors to abandon the objectivity their oaths require. *Lawson v. State,* 389 Md. 570, 594, 886 A.2d 876 (2005).

### Arguing Facts Not In Evidence

Appellant argues that the trial court erred in overruling counsel's objection to the following portion of the State's closing argument:

[PROSECUTOR]: And he sits here today not as a State's witness, but as a defense witness. But he was not going to fall on his sword for Mr. Mines.

He was not going to come in here and lie and say, yeah. I robbed—or I tried to rob this guy. He had had enough. Broken jaw and everything, wired shut as he sat there, that seventeen-year-old young man beaten up—

\* \* \*

[PROSECUTOR]: No amount of intimidation. We're going to put a hit out on you—

[DEFENSE COUNSEL]: Your Honor, I'm going to object. There's no evidence in the record that his injury is in any way related to these charges and—

THE COURT: The jury can come to whatever conclusion they think is fair from the evidence.

The evidence presented at trial revealed that Lyons had been beaten up, his jaw had been broken and, at the time of trial, was wired shut. According to Lyons, Brittney's friend, Laura, told him that if he did not turn himself in, "they was going to get somebody to put a hit out on me." Lyons also testified that appellant told him to turn himself in, told him what to say, and told him that Lyons would probably get probation or house arrest because he was a minor. Finally, Lyons testified that "they" told him that if he did not turn himself in "they was going to get somebody to kill me." Lyons stated that he was afraid, had moved from his home, was assaulted and had his jaw broken, and that he was still afraid of appellant and his girlfriend.

In closing argument, the prosecutor did not state that appellant broke Lyons's jaw, but rather drew logical inferences from the evidence presented. Contrary to appellant's contention, the prosecutor's arguments were not improper, notwithstanding the fact that Lyons testified that he did not know who broke his jaw or why they did so. Moreover, the prosecutor's argument did not improperly appeal to the passions of the jury. The trial court did not abuse its discretion in overruling appellant's objection to the prosecutor's argument.

### *Lyons's Testimony That The Victim Followed In His Car*

Defense counsel argued that Lyons only could have known that the victim "followed us half way down the street" if he was actually at the scene of the attempted robbery. In response, the prosecutor argued, in rebuttal:

And when Mr. Adams told you he was there at the scene and Mr. Pinones pointed out Photo Number 2, which you'll see which is Mr. Adams, he said this guy, this guy right here, he was there and he ran off. He wasn't involved in the robbery. He was there and he ran off, so that's how Mr. Lyons knew to say to police that the victim followed, because that's what Mr. Adams told him to say because Mr. Adams was a witness to this. He was a witness to Mr. Mines doing the attempted robbery. And Mr. Adams is the person who came in to here and kept adding to his story until he was sure it would get Trey arrested and exonerate Mr. Mines.

Lyons's testimony makes clear that after the attempted robbery he spoke with appellant, appellant's girlfriend Brittney, and her friend, Laura, and appellant told him what he ought to say. Nevertheless, appellant argues that Lyons never explained how he knew about the victim following in his car and, therefore, the State argued facts not in evidence. We disagree.

The State's theory was that appellant was the person who attempted to rob the pizza delivery person, and that appellant and his friends tried to pressure Lyons into taking the blame for the crime, because he was a juvenile, and told him what to tell the police. A reasonable inference from the trial testimony is that appellant was present and involved in the attempted robbery, and that information about the crime was given to Lyons by either appellant or another person who was at the scene. It was, therefore, reasonable for the prosecutor to argue that the source of the information about the crime was either appellant or one of his friends, such as Adams, and not Lyons. For this reason, we conclude that there was no error and, as a result, we decline to grant plain error review on this issue.

### Absence Of Defense Witnesses

Appellant next contends that it was error for the prosecutor to point out the absence of potential defense witnesses such as the friends he was playing basketball with, his girlfriend, and

the people with whom he was speaking during the time between the end of the basketball game and his arrest. Appellant repeats his argument that the prosecutor's remarks improperly shifted the burden of proof because he never opened the door to such comments. For the same reasons we have expressed *supra*, we conclude that the prosecutor's argument did not improperly shift the burden of proof, particularly because appellant testified in his own defense and specifically named the people he had contact with on the night of the crime.

### Golden Rule Argument

Appellant's final contention is that during rebuttal closing argument, the prosecutor improperly asked the jurors to place themselves in the shoes of the victim, arguing:

> Some of you may have had experiences in your life and you don't know how you're going to react until you're under the severe pressure. Will I run; is it fight or flight; will I be able to focus. And I would say in most people's experience, under pressure you can focus, and then afterwards you may be shaking. You may be upset. If you've ever witnessed a traumatic event. If you're ever in a car accident you have to steer. You're senses are sharpened. You're hyper-aware. You're protecting yourself. You avoid being in the crash and then afterwards, you're shaking and you're upset. But you are focused on what happened and that's what happened to him. And that's what Mr. Pinones was able to convey all of these facts.

Appellant contends that with those words the State asked the jurors to put themselves in the shoes of the victim, and to think about how they would react in a similar situation. Appellant asserts that the prosecutor was encouraging the jurors to decide the case based on their own interests and biases instead of on the evidence presented at trial.

In support of his argument, appellant directs our attention to *Lawson v. State*, 389 Md. 570, 886 A.2d 876 (2005), in which the Court of Appeals determined that a prosecutor's argument asking jurors to put themselves in the shoes of the mother of a

seven-year-old victim improperly appealed to the jurors' prejudices and asked them to abandon their neutral fact-finding role. *Lawson,* 389 Md. at 594–95, 886 A.2d 876. Appellant contends that what makes the prosecutor's arguments so egregious in the case at hand "is the great probability that it would mislead the jury because a [sic] people are likely to assume that they would be able to identify an attacker no matter the stress of the situation." We are not persuaded.

In closing argument, defense counsel argued that "[a]ny human being being put in this terrifying situation, the mind is going to do things. The mind will convince somebody that things happened a certain way when they didn't. It's not a reliable state of mind to gather information. . . ." The prosecutor responded by asking the jurors to use their own experiences to evaluate the credibility of Pinones's testimony. The prosecutor's request, we believe, was supported by the jury instructions, which directed the jurors to consider the evidence "in the light of your own experiences," and permitted them to "draw any reasonable inferences or conclusions from the evidence that you believe to be justified by common sense and your own experience." In addition, in *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974), the Court of Appeals recognized that "the basic 'boilerplate' in charging a jury concerning the weight to be given the evidence is that they are entitled, as jurors, to use their own common sense, their own experiences in life and their own knowledge of the ways and affairs of the world." *Wilhelm,* 272 Md. at 439, 326 A.2d 707. Again, we find no error.

Although he recognizes that only one of his four assertions was actually preserved for our consideration, appellant argues that reversal is required because the cumulative effect of the prosecutor's remarks was highly prejudicial. For the reasons we have discussed, we find no error and, considered separately or together, the errors complained of do not constitute a basis for reversal.

**JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**