751 A.2d 24

**Marvin D. WISE**

v.

**STATE of Maryland.**

**No. 6989, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

May 3, 2000.

128

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SONNER and DENNIS M. McHUGH (specially assigned), JJ.

SONNER, Judge.

This case comes to us from a conviction after a jury trial in the Circuit Court for Baltimore City of appellant, Marvin D. Wise, Sr., for street level drug dealing. Wise received a sentence for the conviction for possession of cocaine with

intent to distribute of twenty-eight years, with fourteen years suspended and five years of probation upon release. The court merged a conviction for possession of cocaine. On appeal, Wise raises three issues:

1. Did the lower court err by denying his motion to suppress the evidence resulting from the illegal stop, arrest, and search?

2. Did the lower court err by overruling his objections to the testimony of an Assistant State's Attorney and a police fingerprint examiner about the huge number of felony drug cases in Baltimore?

3. Did the lower court err by overruling his objections and mistrial motion to improper jury arguments made by the prosecutor?

We find no error on the first issue; on the second issue we find the court committed harmless error in admitting the Assistant State's Attorney's testimony, and on the third issue hold that the prosecutor's remarks in closing argument were proper.

The events leading up to Wise's arrest and trial began on the afternoon of September 23, 1998, when six plainclothes detectives from the Baltimore City Police Department's Drug Enforcement Division were driving in three unmarked vehicles in the Sandtown neighborhood of Baltimore. Both appellant and appellee agree on appeal about how the police arrested Wise and discovered the drugs that formed the basis for his conviction. The essence of Wise's defense at trial was that the drugs the police discovered did not belong to him.

Detective Bryant Moore, who was driving the first of the three vehicles, and Detective Todd Williams, who was driving the last of the vehicles, observed Wise walk into an alley in a neighborhood known for its drug dealing. Wise's walking into the alley raised their suspicions that he might be a drug dealer. Detective Moore testified that he stopped for about five seconds at the stop sign at the corner of Riggs Avenue and North Calhoun Street, then drove through the intersection and pulled up to the alley to see more clearly what Wise

was doing. What he testified he saw was Wise balling up a brown paper bag and placing it under a telephone book in a grassy area in the alley. At that point, according to Detective Moore's testimony, Wise looked at Detective Moore's vehicle, made eye contact with Moore, after which Wise's "eyes widened," and he took a few steps backwards. When Detective Moore got out of his vehicle, Wise ran past him to Riggs Street and then onto North Calhoun Street, where Detective Anthony Barksdale, who was in the second vehicle, intercepted him and, with the help of other detectives, placed him face down on the street and handcuffed him. Meanwhile, Detectives Moore and Williams entered the alley, where Detective Moore lifted up the telephone book in the grassy area and pulled out a brown paper bag with two plastic bags inside, one with 67 vials and the other contained 36 vials of what was later determined to be cocaine. The officers then searched Wise and found forty dollars in one-dollar and five-dollar bills.

Although there was a Police Department General Order in existence that requires an officer who seizes a package of suspected narcotics in a felony case to submit the package for fingerprint analysis, the detectives who arrested Wise did not submit the bags and vials they found in the alley. The failure of the police to submit the packages became central to Wise's defense at trial as he attempted, through his attorney, to show that, because of the incomplete investigation, the evidence was insufficient to connect him with the drugs. The Assistant State's Attorney, in anticipation of the defense, had told the jury about the failure to follow the General Order in his opening statement, as did Wise's attorney. Wise offered no evidence on the issue, or any other issue, during the defense case and, instead, cross-examined the State's witnesses, those who participated in the arrest, and those called to explain the failure of the police to comply with the Order.

The fingerprint examiner for the Baltimore City Police Department, Roy Michael Jones, testified as an expert that it was difficult, although possible, to obtain latent fingerprints from paper bags, plastic bags, gel caps, and vials. He also testified that his fingerprint examination unit had a backlog of

about 1,150 cases, but that if the bags had been submitted to his unit, he could have completed the analysis in time for Wise's trial. The State also called Salvatore Fili, an Assistant State's Attorney and Chief of the Narcotics Investigation Unit of the State's Attorney's Office for the City of Baltimore, to testify that 4,423 defendants were charged with narcotics felonies in Baltimore City in 1997. Over defense counsel's objection and, after a lengthy hearing, the court permitted Fili to testify as to the number of defendants charged.

## THE SEIZURE

Wise first argues that the lower court erred in denying his pretrial motion to suppress the forty dollars found on his person because it was seized as a result of an unlawful stop, arrest, and search. Wise did not move to suppress the cocaine.

The United States Supreme Court recently removed any doubt as to whether Wise's flight, under these circumstances, justified the police chase and his subsequent detention in a decision holding that a person's unprovoked flight in a high crime area upon observing police creates reasonable suspicion, enough to justify detention to determine whether criminal activity is afoot and to conduct a limited search. *Illinois v. Wardlow*, —— U.S. ——, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). That case, like this one, grew out of police patrolling with a multi-car caravan in an area known for its high narcotics traffic. *Id.* Wardlow, whom the police saw in possession of glassine bags, looked in the direction of the officers and then fled. *Id.* at 675. The officers managed to corner him after a chase and conducted a pat down search, which revealed a weapon that led to his prosecution and conviction for the possession of it. *Id.*

 Applying *Wardlow* to the facts in this case, we find that the search was proper. By making eye contact after balling up a paper bag and placing it under a telephone book and then reacting with a look that the officers could conclude indicated his subsequent flight was a reaction to them, Wise

created a situation that entitled the officers to stop and detain him for a brief period. The immediate discovery of the brown paper bag with the incriminating evidence at the location where they had just observed Wise gave them the probable cause to support the arrest. After making the arrest, they discovered the forty dollars in Wise's pocket. The search was proper, and we affirm the court below on this issue.

## THE FINGERPRINT TESTIMONY

Wise next argues that Roy Michael Jones and Salvatore Fili should not have been permitted to testify about the large number of felony drug cases in Baltimore because their testimony was irrelevant and highly prejudicial. The State contends that both witnesses were properly permitted to testify in order to rebut defense counsel's argument that the police had not acted properly when they did not comply with the General Order.

Jones testified as an expert witness, and so we review the propriety of his testimony accordingly. The admissibility of expert testimony is governed by Maryland Rule 5–702, which states:

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, expertise, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

Md. Rule 5–702 (2000). A trial court has broad discretion to rule on the admissibility of expert testimony and its decision to admit or exclude such testimony is rarely reversed. *Oken v. State*, 327 Md. 628, 659, 612 A.2d 258 (1992), *cert. denied*, 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993); *Simmons v. State*, 313 Md. 33, 43, 542 A.2d 1258 (1988). Whether

an expert witness's testimony is relevant depends on whether the jury will find the testimony helpful in resolving the issues in the case. *Simmons*, 313 Md. at 41, 542 A.2d 1258.

The record shows that Jones testified at length about fingerprinting and the difficulties of obtaining suitable fingerprints from gel capsules and vials. For instance, he testified that, after processing about seven hundred gel capsules, he developed only one suitable latent print, and he has never found a suitable print after processing over a thousand vials. He estimated that, in narcotics cases, suitable latent fingerprints are recovered from only five percent of all evidence. Jones also testified that he was familiar with the Police Department's General Order and that one aspect of the order was that police officers could try to lift fingerprints themselves and then submit the items to Jones's office for further analysis. He next stated that there are three latent fingerprint examiners and three trainees employed by the Baltimore City Police Department and that there are more than 1,150 cases backed up, each of which could require a hundred lifts to check for fingerprints. Finally, Jones stated that, to the best of his knowledge, the General Order was not generally followed.

The failure of the police to follow protocol or, even without a General Order, to refuse to look for fingerprints is a proper and legitimate defense tactic for attempting to create reasonable doubt, *Eley v. State*, 288 Md. 548, 419 A.2d 384 (1980), but it is somewhat disingenuous for Wise to raise the issue of police misconduct and then argue that the testimony of the State to counter his allegation was not relevant. We find no abuse of discretion in admitting Jones's expert testimony and explanation about the backlog of 1,150 cases. This expert testimony could help a jury to understand why the police officers may not have complied with the General Order and controverts the implication that, had they done so, Wise would have been shown not to have been the one in control of the cocaine.

■ However, we agree that Assistant State's Attorney Fili's testimony was irrelevant. During trial, the entirety of Fili's testimony over objection went as follows:

THE WITNESS: My name is Salvatore Fili. I'm an Assistant State's Attorney and Chief of the Narcotics Investigation [U]nit of the State's Attorney's Office for the City of Baltimore.

Q Mr. Fili, what are the responsibilities of the Narcotics Investigation Division of the State's Attorney's Office?

A We try all of the cases that are charged as felony narcotics in the Circuit Court for Baltimore City.

Q And does the division keep annual statistics of the numbers of felonies charge[d] and prosecuted by our unit in Baltimore City?

A We keep statistics of the number of defendants charged.

Q And do we have—do you have statistics showing the number of defendants charged in 1997?

A Yes, I do.

Q And are those statistics kept in the regular course of business of the State's Attorney's Office?

A Yes.

Q And how many defendants were charged with narcotics felonies in the calendar year 1997?

A 4,423.

■ Maryland Rule 5–401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401 (2000). "Evidence of collateral facts, or of [facts] which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, should be excluded, for the reason that such evidence tends to divert the minds of the jury from the real point in issue, and may arouse their prejudices." *Dorsey v. State,* 276

Md. 638, 643, 350 A.2d 665 (1976) (quoting *Pearson v. State,* 182 Md. 1, 13, 31 A.2d 624 (1943)).

In this case, Fili's testimony about the number of defendants charged with narcotics felonies in 1997 lacked any probative value and tended to divert the jury. It did not assist the jury in determining whether Wise was guilty of the crimes with which he was charged. We completely reject the State's argument that it tended to prove why police officers may violate the General Order. Fili's testimony did not even mention the Order. At most, he sought merely to establish a collateral fact that the State's Attorney's Office is busy combating the city's drug problems. However, even this collateral fact contains no probative value to assist the jury in deciding whether the police are justified in ignoring the General Order, much less whether Wise was guilty of possession of cocaine and possession of cocaine with intent to distribute. Rather, Fili's testimony tended to shift the jury's attention away from the real issue in the case, and ran the risk of arousing the jurors' prejudices, just as if the State had called an Assistant State's Attorney to enumerate the office case load of child abuse or murder cases in a trial of a defendant for one of those offenses and justify the testimony as explication for the police misconduct in gathering or properly preserving evidence.

▮ We are, however, persuaded beyond a reasonable doubt that Fili's testimony did not contribute to Wise's guilty verdict; it was harmless error, the error of admitting such testimony did not rise to the level so as to require reversal. *Dorsey,* 276 Md. at 659–60, 350 A.2d 665. As the court below said in admitting the evidence, "I don't think there's any citizen of Baltimore who doesn't know that there's a huge drug problem in the city." The fact that the State's Attorney's Office has a large load of drug cases was hardly a surprising revelation.

▮ Prosecutors would be well advised to foreswear the use of similar evidence. The State runs the real risk of dooming a successful prosecution when it offers evidence that

stirs the jury's fears and concerns about the prevalence of crime or of a particular crime and does not assist in the determination of a material fact. Indeed, it is improper conduct for a prosecutor to attempt to enlist the members of the jury in the drug war or ask them to confront crime in the streets by convicting the accused on trial. *Hill v. State*, 355 Md. 206, 225–26, 734 A.2d 199 (1999); *Couser v. State*, 36 Md.App. 485, 501, 374 A.2d 399 (1977), *aff'd*, 282 Md. 125, 383 A.2d 389, *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978).

## III.

Wise's final argument is that the lower court erred in overruling his objections to the State's closing argument and in denying his motion for a mistrial. Specifically, Wise argues that the State improperly shifted the burden of proof to Wise by asking the jurors to consider Wise's failure to call witnesses in his defense or to testify in his own defense.

The State's closing argument went as follows:

[PROSECUTOR]: ... I'm going to ask you not to speculate, not to speculate because that's what he's going to ask you, *because the defense didn't produce a witness.*

There's no evidence that the defendant was waiting for a bus. Where did you hear that? You heard that in his opening statement which the judge just told you is not any more evidence than mine.

*Nobody got on the stand and testified to that.*

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: There's no evidence that the police found the stash in an alley and grabbed an innocent man and charged him with it.

*No witness got on the stand to tell you that, not even the defendant's sister.*

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[PROSECUTOR]: Whose name was read to you as a potential witness during voir dire.

[DEFENSE COUNSEL]: Objection.

THE COURT: Well, the jury understands that the defense has no burden to produce witnesses because the burden is always on the State to prove the defendant's guilt.

[PROSECUTOR]: The next—that's the next thing in my notes. The defendant has no obligation to produce any evidence. Right there.

But, when a defense counsel stands in front of a jury, and makes accusations like he's going to make against Detective Moore—he's going to accuse him of what he's going to accuse him of—if I—if I've read his questioning of witnesses correctly. And don't you think he ought to have something to back it up.

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[PROSECUTOR]: And I think in this case you're going to find that the defense simply doesn't exist. It doesn't exist because the defendant is guilty as charged.

The State's rebuttal argument went as follows:

[PROSECUTOR]: ... [T]he reason that I have a finger-print kit, is not because I want to try fingerprint issues in cases, it's because in every drug case—

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Sustained. They know that this is argument. They're not going to base their decision on it.

[PROSECUTOR]: It's because the General Order is his issue.... That's the defendant's issue in every drug case. And it was his issue—

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]:—in this case.

THE COURT: Overruled.

[PROSECUTOR]: ... [P]olice officers who work the street, the men who do the work, realized very quickly that to attempt to recover suitable latent fingerprints from all those

drug items was an extraordinary waste of resources and time.... [T]he people in the headquarters building—and by the way there was a Officer McCall, whose name was listed as a potential witness in this case, who wasn't called to testify.

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Sustained, sustained, sustained.

[PROSECUTOR]: Well, if someone from Planning and Research would have come here, would they have said these officers are still required to recover latents? They wouldn't. Otherwise, he would have been called there.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

* * *

[PROSECUTOR]: ... *My question to you is, where is his evidence for any of the arguments he made?*

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Overruled.

[PROSECUTOR]: ... *Where is his evidence that the defendant feared for his safety? Where is his evidence that the defendant was—the police were—*

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]:— *aggressive? Where is his—*

THE COURT: ... I think the jury understands again that the defense has no burden of proof in this case.

[PROSECUTOR]: *But where's his support for anything he told you?*

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]: *Where's the support and any evidence that dealers left the area?*

THE COURT: Overruled.

[PROSECUTOR]: *Where's his evidence of anything that he told you?*

(Emphasis added.)

Maryland law is clear that counsel have great latitude in the presentation of closing arguments, and any restriction of remarks is within the trial court's sound discretion. *Degren v. State,* 352 Md. 400, 429–31, 722 A.2d 887 (1999); *Henry v. State,* 324 Md. 204, 230, 596 A.2d 1024 (1991), *cert. denied,* 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992). However, there are limitations in order to protect a defendant's right to a fair trial. *Degren,* 352 Md. at 430, 722 A.2d 887; *Henry,* 324 Md. at 230, 596 A.2d 1024. Reversal of a conviction is required in those cases in which the prosecutor's remarks actually misled or were likely to have misled the jury to the defendant's prejudice. *Degren,* 352 Md. at 431, 722 A.2d 887; *Henry,* 324 Md. at 231, 596 A.2d 1024. In determining whether reversible error occurred, we must take into account the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error, if any. *Henry,* 324 Md. at 232, 596 A.2d 1024.

Even when a prosecutor is not guilty of misleading the jury about the evidence, reversal may still be necessary if the prosecutor's remarks trespass upon a defendant's Constitutional rights. In 1965, the United States Supreme Court condemned a prosecutor's comment on a defendant's failure to testify and held that, in doing so, the prosecutor violated a right protected by the Fifth Amendment. *Griffin v. California,* 380 U.S 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Such comments are impermissible whether they be intended to call attention to the defendant's failure to testify or be of such character that the jury would naturally conclude that it was a comment about the failure to testify. *Lincoln v. Sunn,* 807 F.2d 805, 809 (9th Cir.1987); *United States v. Bagley,* 772 F.2d 482, 494 (9th Cir.1985), *cert. denied,* 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986). Calling attention to the fact that

a defendant failed to present evidence sails dangerously close to the wind.

However, the courts since *Griffin* have distinguished those comments by prosecutors about the failure to offer evidence regarding matters for which the defendant is the only witness and those for which the evidence is available from other defense witnesses as well. The decisions, in other words, have distinguished between those comments about a defendant's failure to explain by testifying and those comments about the failure of the defendant to explain through other witnesses. *U.S. v. Mayans*, 17 F.3d 1174, 1185 (9th Cir.1994).

Here, there can be no doubt that the prosecutor was referring to the failure of the defense attorney, who had made the claim during opening statement that he would produce certain evidence, to follow through. The defense attorney's opening statement went as follows:

> [Defense counsel]: ... What really happened in this case, ladies and gentlemen? The evidence is going to show you that Detective Moore did not see ... Mr. Wise hiding anything. Those drugs that the police officer eventually found were hidden in that alleyway before the police officers arrived on the scene and the person who hid those drugs was gone away from the scene before the police arrived there....
>
> Make no mistake about it, ladies and gentlemen, the police's motivation here today is to sell their story and they are professional witnesses.
>
> [Prosecutor]: Objection, Your Honor.
>
> THE COURT: Overruled.

* * *

> [Defense counsel]: ... [T]here [were] four police cars and they were essentially cruising down Riggs Avenue, coming this way. It was essentially a motorcade, almost like a parade of four ... police cars....

These were called unmarked cars, but as any officer will tell you today they are not undercover cars. Any person, especially that's involved in the drug trade, would have immediately recognized those vehicles as what they were, which is police vehicles, and *the evidence is going to show, ladies and gentlemen, that the person who hid those drugs in this alleyway spotted those police long before they arrived on the scene.* They were cruising down the street in a line, no cars between them between ten and fifteen miles per hour very, very slowly in broad daylight along the broad lane of Riggs Avenue.

*Anyone involved in the drug trade, you will hear testimony, would have spotted those cars a long way away and anyone who was involved in the drug trade would have been long gone before they even reached this intersection.* . . .

[P]olice officers are charged with a lot of power. They have the power to use their weapons under appropriate circumstances. They have the power to take someone off the street and put them in the jail. . . .

. . . Marvin Wise was not out there that day hiding drugs nor was he out there selling drugs. Why was he in the area?

Well, the reason why Marvin Wise was in the area is because he lives there. He lives in the area. . . . *He was outside because he was waiting for the number one bus which was supposed to arrive at 3:30 that afternoon.* . . . [H]e was waiting at the bus stop, waiting for the number one bus when the police arrived. He wasn't hiding drugs. . . .

You heard the prosecutor say this is a high narcotics area. . . . It's also a neighborhood. It's where people live. . . . *It's where people like Markeena Wise* [the defendant's sister] *and Mr. Wise have to wait for buses.* . . .

. . . *All it takes is a pointing of a finger. All it takes is an accusation. All it takes is for an overzealous police officer to have found some drugs and needs a body to go*

*along with those drugs* and anyone of us could be sitting where Mr. Wise sits today . . . .

(Emphasis added).

The prosecutor's closing argument was drawing the jury's attention to the fact that defense counsel had failed to fulfill his prediction in opening statement as to what he would develop at trial. By rhetorically asking the jury, "Where is his evidence?" and, "Where is his support?" repeatedly, the State was replying to the defendant's promise that he did not keep. The prosecutor focused on several of those promises. First, Wise did not produce any evidence that the reason for his being at the location in the alley was that he was waiting for the Number One bus. He produced no testimony that drug dealers left the area, or that the police were overly aggressive, or that the police grabbed an innocent man, testimony that Wise could have personally given, but would have been possible for others, such as his sister, to give as well.

One justification for a prosecutor going beyond the evidence in closing argument is for what has been characterized as the "invited response." *Booth v. State,* 327 Md. 142, 197, 608 A.2d 162, *cert. denied,* 506 U.S. 988, 113 S.Ct. 500, 121 L.Ed.2d 437 (1992); *Icgoren v. State,* 103 Md.App. 407, 442, 653 A.2d 972 (1995). What may be improper under some circumstances is proper under other limited circumstances, such as when defense attorneys have improperly injected matters into the trial during argument. Closing argument limitations apply to the defense attorneys as well as prosecutors, and when a defense attorney goes outside the evidence, there can be justification for lowering the bar and not condemning remarks in the prosecutor's rebuttal that would otherwise be improper. Nevertheless, the prosecutor's response should be of the same kind and character as the offending argument by the defense attorney and designed to cure the effect of the misconduct. The misconduct should not invite a response that goes beyond bringing the jury back to a "fair and calm consideration" of the evidence. *Com. v. Mahdi,* 388 Mass. 679, 448 N.E.2d 704, 712 (1983); *Com. v. Hogan,* 12

Mass.App.Ct. 646, 428 N.E.2d 314, 319 (1981), review denied by *Com. v. Hogan*, 385 Mass. 1102, 440 N.E.2d 1173 (1982); Rosemary Nidiry, *Restraining Adversarial Excess in Closing Argument*, 96 Colum. L.Rev. 1299, 1333–1334 (1996).

This Court has approved of prosecutors calling attention to the failure of defendants to come forward with evidence that they promised to produce in opening statements. In *Eastman v. State*, 47 Md.App. 162, 422 A.2d 41 (1980), the prosecutor argued to the jury that the statement by the defense attorney that the defendant "could not recall what he was doing on two obscure dates" as the reason he was not going to offer an alibi defense was not supported by evidence, that all of the believable evidence in the case had come from the prosecution's six witnesses, that the one witness called by the defense, not the defendant, was untrustworthy and therefore there was no evidence to support the prediction by the defense attorney that the defendant did not know where he was when the robbery occurred. The court was unwilling to permit unfulfilled promises of evidence in opening statements to stand unanswered. In affirming the conviction, the court made reference to *Eley v. State*, 288 Md. 548, 419 A.2d 384 (1980), in which the Court of Appeals had recognized the right of a defendant to comment upon the failure of the State to produce evidence, and said:

> If it is not unreasonable to permit the defense to comment upon the State's shortcomings in producing prosecutorial evidence, we can hardly preclude a reciprocal right for the State "to call attention" to the failure of a defendant to come forward with that which he promised to produce.

> Although appellant's failure to take the stand may have been inferable, in light of the context, such inference would have been strained indeed. A more likely inference was available in appellant's opening statement that he would testify to why he had no alibi. There is not the slightest indication that the State was merely grasping for an opportunity to emphasize the failure to testify. To the contrary,

the State carefully avoided any emphasis even by implication.

*Eastman,* 47 Md.App. at 167, 422 A.2d 41.

The thrust of Wise's complaint goes further than the ground that the comments in closing argument drew attention to his choosing not to testify. He complains that the comments also improperly "shifted the burden" by implying that the defendant had a duty to present evidence. This requires a slightly different analysis than just a determination of whether the remarks called attention to a defendant's failure to testify. The Court of Appeals has not directly spoken on the issue, except in dictum in the form of a footnote. In *Eley v. State, supra,* Judge Cole, speaking for the majority, reversed a conviction in which the defendant was precluded from arguing to the jury about the State's unexplained failure to produce any fingerprint evidence. That ruling had the effect of precluding defense argument about the lack of evidence. In so holding, Judge Cole added the footnote:

> Our decision today must not be interpreted as an invitation to the prosecution in a criminal case to comment upon the defendant's failure to produce evidence to refute the State's evidence. Such comment might well amount to an impermissible reference to the defendant's failure to take the stand. Moreover, even if such a comment were not held tantamount to one that the defendant failed to take the stand it might in some cases be held to constitute an improper shifting of the burden of proof to the defendant. *Cf. People v. Shannon,* 88 Mich.App. 138, 276 N.W.2d 546 (Ct.App.1979) (where defendant did not testify or offer any proof, the prosecution by commenting on the nonproduction of witnesses improperly shifted the burden of proof to the defendant.)

*Id.* at 555, 419 A.2d 384.

Judge Bell, now Chief Judge of the Court of Appeals, when on this Court quoted that footnote in deciding to overturn a murder conviction because the Assistant State's Attorney had argued to the jury that the defendant had failed to call two

character witnesses whom he had identified in the jury *voir dire* and one fact witness whom he mentioned during his testimony. *Woodland v. State*, 62 Md.App. 503, 516, 490 A.2d 286 (1985). Regarding the character testimony, Judge Bell held it impermissible to comment about the failure to produce it because "it effectively shifted the burden to appellant to call witnesses, a burden appellant did not have." *Id.* Judge Bell indicated that the argument referring to the failure to call the fact witness "compounded the error."

It is clear that Maryland holds such remarks to be unfair comment and does not permit the prosecutor to point out the absence of defense witnesses who, during the selection of the jury, the defense indicated might be called as witnesses. Said another way, Maryland prosecutors, in closing argument, may not routinely draw the jury's attention to the failure of the defendant to call witnesses, because the argument shifts the burden of proof. On the other hand, a defense attorney's promising in opening statement that the defendant will produce evidence and thereafter failing to do so does open the door to the fair comment upon that failure, even to the extent of incidentally drawing attention to the defendant's exercising a constitutional right not to testify.

Such a contradistinction rationally distinguishes between the lack of prediction attendant to listing names in *voir dire* and the calculated injection of unsupported facts before a jury that have not been filtered through the rules of evidence or withstood the test of cross-examination. Witness lists furnished to the court and then announced to the jury panel do not carry any promise as to content of testimony or prediction as to what will develop. Opening statements, on the other hand, usually do involve predictions about what the jury will hear and can be the means by which an unscrupulous or well intentioned advocate can submit facts to the jury that can have a sizable influence upon the outcome of the trial. We hold that the prosecutor's comments here were a reasoned and justified response to the excesses of the defendant's opening statement and as such did not violate the defendant's constitu-

tional rights. The court below was not in error for not sustaining the objections to the comments and we therefore affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**