REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 2254

September Term, 2013

_____


DEVIN PAIGE

v.

STATE OF MARYLAND

_____


Berger,
Nazarian,
Leahy,

JJ.

_____


Opinion by Berger, J.

_____


Filed: April 2, 2015

Following a four-day jury trial in the Circuit Court for Baltimore City concluding on July 31, 2013, Devin Paige, appellant, was convicted by the jury of first-degree rape, third-degree sexual offense, second-degree assault, and third-degree burglary.[1] On December 3, 2013, the circuit court sentenced appellant to serve a life term in prison, all but fifty years suspended, for his rape conviction. The court imposed additional concurrent sentences of ten years for third-degree sexual offense, ten years for second-degree assault, and five years for third-degree burglary. In his timely filed appeal, appellant presents three questions for our review:

> 1. Did the trial court err in propounding coercive jury instructions?
>
> 2. Did the trial court err in failing to merge appellant's convictions?
>
> 3. Did the trial court err in allowing the State to make improper and prejudicial statements at closing argument?

Because we conclude that the circuit court erred by failing to merge the offenses of second-degree assault and first-degree rape for the purposes of sentencing, we shall vacate the ten-year concurrent sentence imposed by the court for appellant's assault conviction. Discerning no other legal error or abuse of discretion, we shall affirm the judgments of the circuit court.

---

[1] The jury acquitted appellant on charges of first and second-degree sexual offense, first-degree assault, first-degree burglary, and handgun charges.

## FACTUAL AND PROCEDURAL HISTORY

On the night of June 16, 2006, the victim was at home with her sons in their residence at 718 Wharton Court, Baltimore, Maryland. Some time after she went to bed at around 11:00 p.m., the victim was awakened by an unknown intruder who threatened her with a gun, then sexually assaulted and raped her before leaving her residence. The victim was taken to the hospital, where a sexual assault forensic examination was conducted.

Several years later, the police developed appellant as a suspect in the rape. On December 21, 2010, the police obtained and executed a search warrant to collect DNA evidence from appellant. DNA from appellant was compared to DNA that was obtained during the hospital examination of the victim following her assault. Appellant's DNA was consistent with the DNA of the unknown male who attacked the victim on June 17, 2006. Appellant had previously resided with his mother at 718 Wharton Court, the same address at which the victim was living at the time she was attacked.

## DISCUSSION

### I.    Jury Instructions

Following the jury instructions and the parties' closing arguments, the trial court turned the case over to the jury for its deliberations. In the course of informing the jurors regarding the administrative processes and procedures in place during their deliberations, the court stated, in pertinent part:

> We will at this time collect all of the evidence and bring
> it into the jury room for you. I note that it's 20 minutes of four.

2

*We will deliberate as long as you would like. If at some point in time you want to stop for the evening and return in the morning, you need only let us know that. And we will give you a note and you can tell us what time you would like us to convict - - to resume your deliberations in the morning.* But for right now, I am now doing what I said I would do. I'm handing the case over to you. And that means we are at your disposal; you tell us what to do.[2]

---

[2] The copy of the transcript that is included in the record reads:

> We will at this time collect all of the evidence and bring it into the jury room for you. I note that it's 20 minutes of four. We will deliberate as long as you would like. If at some point in time you want to stop for the evening and return in the morning, you need only let us know that. And we will give you a note and you can tell us what time you would like us to resume your deliberations in the morning. But for right now, I am now doing what I said I would do. I'm handing the case over to you. And that means we are at your disposal; you tell us what to do.

The copy of the relevant page of the transcript that is included in the appendix to appellant's brief, as reproduced in the text above, includes the word "convict." An excerpt from the trial transcript that was admitted as an exhibit during the hearing on appellant's motion for a new trial also includes the word "convict."

A copy of the audio recording that was made in the courtroom during appellant's trial was also submitted as an exhibit at the hearing on appellant's motion for a new trial. Based on our review of the audio recording, it appears that the trial court intended to instruct the jury that it should "tell us what time you would like us to convene," but that the court stopped short of finishing the word "convene," annunciating a "con-vi" or "con-vic" sound that was, reasonably, we think, interpreted by defense counsel and the court's transcription service as "convict." For the purposes of the instant appeal, we shall afford appellant the benefit of the doubt and proceed on the understanding that the jurors may have perceived that the trial court used the word "convict" while addressing them prior to their deliberations.

After the court concluded its comments, defense counsel requested a bench conference and informed the court of the misstatement made during the court's comments, indicating that both he and his client had heard the court instruct the jurors to inform the court when they were ready to "convict."

To remedy any confusion, the court immediately provided the following curative instruction to the jury:

> Ladies and gentlemen, I'm being told that I said the word convict. I said reconvene. Reconvene means you . . .[3]
>
> \*　　\*　　\*
>
> Now, ladies and gentlemen, you are the jury. And you are the determiners of the facts and the evidence. And I'm giving you the verdict sheet. Reconvene means when you stop for the day and you come back another day and continue your deliberations. The word is reconvene, reconvene. Not convict, but reconvene.
>
> And so you have the right to sit here and deliberate as long as you want. We have to wait for you. If you get hungry or tired, we stop. We take all the evidence, we lock it away. You tell us what time you're going to come back. And when all 12 of you are back, you reconvene and continue your deliberations. That's the process.
>
> And as I told you at the beginning of the case, the case is yours now. You get to tell me when we're going to continue, when we're going to stop. And as I told you before in the instructions, the case is yours. If you need anything from us, you need only let me know by writing me a note. If you have any questions, write me a note. If you have a verdict, you press

---

[3] An observer from the gallery interjected that the court had said "convict," and was immediately removed from the courtroom.

on that buzzer and knock on the door. It will ring in my office. And we will reconvene everyone. Meaning we'll get everyone back together and we'll take your verdict at that time. Now, that's the process. If you heard me say convict, that's not my intention and that's not the word I was using. I was using the word reconvene, meaning to bring back together everyone.

Ladies and gentlemen, at this time please go into the jury room, recess there and we await your decision.

The jury subsequently convicted appellant on charges of first-degree rape, third-degree sexual offense, second-degree assault, and third-degree burglary, and acquitted him on charges of first and second-degree sexual offense, first-degree assault, first-degree burglary, and handgun offenses.

Immediately after the jury rendered its verdict, defense counsel made a motion for a new trial. In a subsequent memorandum and at a hearing on appellant's motion prior to appellant's sentencing on December 3, 2013, defense counsel asserted that the trial court's misstatement while addressing the jury materially prejudiced the jury against appellant. After hearing the arguments of the parties and the testimony of an expert witness for the defense, the trial court denied appellant's motion for a new trial.

On appeal, appellant asserts that the trial court erred by accidentally using the word "convict" instead of the word "reconvene" in the course of informing the jury regarding procedural matters relevant to their deliberations. Appellant suggests that this "coercive" instruction, "indicated to the jury that [the court] had determined [a]ppellant to be guilty and that conviction was the only proper outcome for it to reach." Appellant further asserts that

5

following the misstatement, the court abused its discretion by providing an inadequate curative instruction "that served to further exacerbate" the prejudice that had accrued to appellant. Finally, appellant contends that the circuit court abused its discretion by denying appellant's motion for a new trial. The State disagrees, asserting that the trial court properly exercised its discretion in addressing the perceived misstatement, crafting an appropriate curative instruction, and denying appellant's subsequent motion for a new trial.

We have recently reiterated the following principles that guide our review of a trial court's ruling on a motion for a new trial:

> It is a movant who holds the burden of persuading the court that a new trial should be granted. Whether to grant a new trial lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent an abuse of discretion. The abuse of discretion standard requires trial judges to use their discretion soundly, and we do not consider that discretion to be abused unless the judge exercises it in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law. A trial court's discretion to grant or deny a new trial expands and contracts, depending upon the nature of the factors being considered, and its exercise depends upon the opportunity the trial judge had to feel the pulse of the trial, and to rely on his or her own impressions in determining questions of fairness and justice.

*Brewer v. State*, 220 Md. App. 89, 111 (2014) (internal citations and quotation marks omitted).

As the Court of Appeals has long recognized, "[a]lmost anyone can make a slip of the tongue, and judges are not immune from such errors." *Reed v. State*, 225 Md. 566, 570 (1961). All parties in the instant case agree that the trial court's misstatement, using the word

6

"convict" instead of the word "convene" or "reconvene," was an unintentional error. As noted above, defense counsel noted a timely objection to the court's use of the word "convict," bringing the court's misstatement to its attention and affording the court an opportunity to cure any prejudice accruing to appellant as a result of the perceived mistake. At the time defense counsel articulated his concern to the court in a bench conference, he did not request that the court use any specific language or order any particular relief.

Immediately after defense counsel informed the trial court about the perceived error, the court provided a supplemental instruction to the jury intended to correct any misunderstanding amongst the jurors regarding their responsibility to carefully review the evidence presented and independently determine appellant's guilt or innocence for each of the charged offenses. Thus, in effect, the trial court sustained defense counsel's objection to the court's use of the word "convict" and attempted to address counsel's concerns through the use of a supplemental jury instruction. Defense counsel raised no further objections.

It was not until the next day, after the jury had rendered its verdict, that defense counsel indicated that he had any concerns regarding the supplemental jury instruction that had been provided by the trial court. At that time, defense counsel summarily requested that the trial court grant appellant a new trial. In a subsequently filed motion and supporting memorandum of law, defense counsel asserted, *inter alia*, that because of the position of authority held by a judge in the courtroom, the court's use of the word "convict" in place of the word "reconvene" at appellant's trial may have biased the jury against appellant, thereby

7

depriving him of his constitutional right to trial by a fair and impartial jury. Defense counsel further asserted that once the jury heard that the judge expected them to convict appellant, it was impossible for them to disregard it, and therefore, the trial court's subsequent supplemental instruction was not only inadequate to cure the prejudice that resulted from the court's misstatement, but by repeatedly reinforcing the word "convict," may have actually exacerbated the problem. The circuit court ruled on appellant's motion for a new trial following a hearing on December 3, 2013. Appellant timely filed the instant appeal preserving his objection to the trial court's ruling on his motion.

Preliminarily, we note that after the trial court provided its curative instruction, defense counsel did not raise any additional objections or request any additional relief to cure the prejudice that had purportedly accrued to appellant as a result of the trial court's misstatement. Furthermore, defense counsel at no point moved for a mistrial due to the trial court's misstatement. In the absence of any additional objection or request for relief, the trial court was not obligated to do anything further to correct its inadvertent use of the word "convict." *See Lamb v. State*, 141 Md. App. 610, 644–45 (2001) (holding that where an objection is sustained, a curative instruction given, and no further relief is requested, there is nothing for the appellate court to review). Because defense counsel did not object to the supplemental jury instruction that was provided by the trial court at the time it was given, any question regarding the content of the supplemental instruction was not properly preserved for appellate review. *See* Md. Rule 2-517(c) (requiring a party, "at the time the ruling or

8

order is made or sought," to "make[ ] known to the court the action that the party desires the court to take or the objection to the action of the court"); Md. Rule 4-325(e) (stating that "No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection"); Md. Rule 8-131(a) (providing that "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court"). The only issue properly before this Court on appeal, therefore, is whether the trial court abused its discretion by denying appellant's motion for a new trial.

At the hearing on appellant's motion for a new trial, defense counsel presented the testimony of an expert witness who opined regarding the potential detrimental effects of the trial court's misstatement upon the jurors at appellant's trial. The expert witness testified that her opinion was based solely on her review of a written transcript of the trial court's comments to the jury after the conclusion of the parties' closing arguments, defense counsel's subsequent objection, and the trial court's curative instruction. The expert did not review the preliminary jury instructions that were provided to the jury before the trial commenced, any of the evidence presented during the three-day trial, the extensive jury instructions regarding the law relevant to the case that were provided at the close of all the evidence, the parties' closing arguments, or the audio recording of the proceedings that corresponded to the transcript that she was provided of the court's comments to the jury. In

9

the course of the hearing on appellant's motion, the circuit court also clarified that its comments to the jury after closing arguments were not part of the jury instructions that were recorded and then provided for the jury to reference during their deliberations.

In rendering its determination, the circuit court clearly explained why it was not persuaded by the testimony of the expert witness, whose opinions were based only on her interpretation of a very limited portion of the trial transcript, uninformed by any broader understanding of the evidence, the extensive jury instructions that were provided, or the background and demeanor of the jurors during appellant's three-day trial. The court recalled the extensive jury instructions it had provided, which "repeatedly emphasized that the trier of the facts and the law is the jury." The court also recounted the "proper, appropriate, timely curative instruction" it provided after defense counsel brought the court's use of the word "convict" to its attention. Ultimately, the circuit court was not persuaded that the jury was misled by the court's innocent slip of the tongue regarding their responsibility to consider all of the evidence and draw their own conclusions about appellant's culpability. Accordingly, the circuit court denied appellant's motion for a new trial.

Based on our independent review of the record, we discern no basis upon which we could reasonably conclude that the trial court acted arbitrarily or capriciously in denying appellant's motion for a new trial. In this case, the trial court's isolated slip of the tongue, which was immediately explained and corrected, was not a flagrant or extraordinary error. It is clear from the trial transcript that the court repeatedly emphasized that it was the jury's

duty to carefully consider the evidence and to independently determine whether appellant was guilty of the charged offenses. The court specifically instructed the jury not to draw any inferences based on the questions asked or comments made by the court during the trial. The court also very carefully reviewed every item on the verdict sheet with the jury, and explained that the jury had the option of finding appellant guilty or not guilty for each of the charged offenses. Ultimately, the jury concluded that appellant was guilty of some of the charged offenses and not guilty of others, indicating that the trial court's inadvertent misstatement did not unduly influence the jurors or mislead them into believing that conviction was the only proper outcome of appellant's trial. Under all these circumstances, we decline to overturn the circuit court's ruling on appellant's motion for a new trial.

## II.     Merger of Offenses for the Purposes of Sentencing

The jury returned verdicts of guilty on the counts alleging first-degree rape, second-degree assault, third-degree sexual offense, and third-degree burglary. The circuit court sentenced appellant to serve a period of incarceration of life in prison, all but fifty years suspended, for his conviction of first-degree rape. The court also sentenced appellant to serve two concurrent ten-year sentences for his convictions of second-degree assault and third-degree sexual offense, and a concurrent five-year sentence for third-degree burglary.

Appellant asserts that the trial court erred by failing to merge his convictions for second-degree assault and third-degree sexual offense into his conviction for first-degree rape for the purposes of sentencing. Appellant contends that neither the charging document

11

nor the court specified the assaultive conduct underlying each charge. As such, the jury could have based all three convictions on the same conduct. Appellant concludes, therefore, that his ten-year sentences for second-degree assault and third-degree sexual offense must be vacated.

The State concedes that the circuit court erred by imposing separate sentences for appellant's convictions for second-degree assault and first-degree rape, because those offenses merge for the purposes of sentencing. The State maintains, however, that the offense of third-degree sexual offense does not merge with the offense of first-degree assault, and therefore, the circuit court's imposition of a separate sentence for that offense was proper.

At appellant's trial, in accordance with the relevant statute and the pattern jury instruction, the circuit court instructed the jury as follows regarding the offense of rape:

> Rape is vaginal intercourse with a female by force or threat of force and without her consent. In order to convict the defendant of second-degree rape, the State must prove beyond a reasonable doubt that the defendant had vaginal intercourse with the victim, [ ]. Two, that the act was committed by force or threat of force. And three, that the act was committed without the consent of [the victim].
>
> Vaginal intercourse means the penetration of the penis into the vagina. The slightest penetration is sufficient. Emission of semen is not required. The amount of force necessary depends on the circumstances. No particular amount of force is required but it must be sufficient to overcome resistence, or the will to resist. You must be satisfied that the victim resisted and that her resistence was overcome by force or

12

threat of force. That her will to resist was overcome by the Defendant's actions or under the circumstances.

If [the victim] submitted to sexual intercourse, and if you find that her submission was induced by force or by threats of force that put her in reasonable fear of bodily harm to herself . . . or to another person, then her submission was without consent. Her fear was reasonable if you find that under the circumstances a reasonable woman would fear for her safety.

Consent means actually agreeing to the act of intercourse rather than merely submitting as a result of force or the threat of force.

Now the Defendant is also charged with the crime of first-degree rape. And in order to convict the defendant the State must prove beyond a reasonable doubt all of the elements of forcible second-degree rape and must also prove . . . [t]hat the defendant committed the offense in connection with a burglary in the . . . third-degree.

*See* Md. Code (2002, 2012 Repl. Vol.) §3-303(a) of the Criminal Law Article ("Crim.") (defining and prohibiting first-degree rape); Crim. §3-304(a) (defining and prohibiting second-degree rape); Crim. §3-301(g) (defining "vaginal intercourse"); MPJI-Cr 4:29 (second-degree rape); MPJI-Cr 4:29.1 (first-degree rape).

Regarding the offense of assault, the trial court instructed the jury:

[A]n assault is an intentional frightening of another person with the threat of immediate offensive physical contact or harm. In order for the State to prove this assault in the second-degree, the State must prove beyond a reasonable doubt that the Defendant committed an act with the intent to place the victim, [ ], in fear of immediate, in fear of immediate physical contact or harm.

Two, that the Defendant had the apparent ability at the time to carry out or bring about that physical offense or physical

13

contact. Also that the, and it's and that the victim, [ ], reasonably feared immediate offensive and physical contact or harm and that the Defendant's actions were not legally justified.

Assault is also causing offensive physical contact to another person. In order to convict the Defendant of assault in this manner, often called a battery, the State must prove beyond a reasonable doubt that the Defendant actually caused offensive physical contact or physical harm to [the victim] and that the contact was as a result of an intentional or reckless act of the Defendant and was not accidental. And that the contact was not consented to by [the victim] or legally justified.

*See* Crim. §3-203(a) (criminalizing second-degree assault); Crim. §3-201(b) (defining "assault"); MPJI-Cr 4:01(second-degree assault).

The trial court also instructed the jury as to the offense of third-degree sexual offense, stating:

Third degree sexual offense is proved beyond a reasonable doubt by the State if the State proves that the Defendant had sexual contact with the victim. (2) That the sexual contact was made against the will and consent of the victim, [ ]. And (3) that the Defendant use[d] or displayed a dangerous weapon or object the [the victim] reasonably concluded was a dangerous weapon or inflicted serious physical injury against [the victim] or anyone else during the course of the offense or threatened or placed [the victim] in reasonable fear that she or any other person known to [the victim] would be in immediate threat of physical injury or physical harm.

Sexual contact means the intentional touching o[f] a victim's genital or intimate parts for the purpose of sexual arousal or gratification or for the abuse of either party and it includes penetration, however slight, by any part of a person's body other than the penis, mouth, or tongue into the genital or anal opening of another person's body, if that penetration can be reasonably construed as being for the purpose of sexual arousal

14

or sexual gratification for the, or for the abuse of either party. It does not include acts commonly expressive of familiar or friendly affection or acts for acceptable medical purposes.

*See* Crim. §3-307(a) (defining and criminalizing third-degree sexual offense); Crim. §3-301(f) (defining "sexual contact"); MPJI-Cr 4:29.7 (third-degree sexual offense).

As the Court of Appeals has recently reiterated:

> The merger of convictions for purposes of sentencing derives from the protection against double jeopardy afforded by the Fifth Amendment of the federal Constitution and by Maryland common law. Merger protects a convicted defendant from multiple punishments for the same offense. Sentences for two convictions must be merged when: (1) the convictions are based on the same act or acts, and (2) under the required evidence test, the two offenses are deemed to be the same, or one offense is deemed to be the lesser included offense of the other.

*Brooks v. State*, 439 Md. 698, 737 (2014) (internal citations omitted). In Maryland, we generally use the required evidence test to determine if two offenses constitute the same offense for the purposes of sentencing. *Dixon v. State*, 364 Md. 209, 236 (2001). In applying the required evidence test, we examine the elements of each offense and determine "whether each provision requires proof of a fact which the other does not . . ." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "[I]f all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." *State v. Jenkins*, 307 Md. 501, 517 (1986) (citations omitted). If offenses merge, separate sentences are generally

15

precluded; instead a sentence may only be imposed for the offense having the additional element or elements. *State v. Lancaster*, 332 Md. 385, 392 (1993) (citations omitted).

Alternately, offenses may merge pursuant to the rule of lenity. If the intent of the legislature to impose separate punishments for multiple convictions arising out of the same conduct or transaction is unclear, then the rule of lenity generally precludes the imposition of separate sentences. *See e.g. Whack v. State*, 288 Md. 137, 143 (1980); *Brooks v. State*, 284 Md. 416, 423 (1979). In cases where the jury may have relied upon evidence of the same act or acts to support more than one conviction, previous cases indicate that the individual should be given the benefit of the doubt and the rule of lenity invoked to prevent the court from imposing multiple punishments for the same conduct. *Snowden v. State*, 321 Md. 612, 618-19 (1991)(where record was not clear, assuming "that the jury based all of the convictions on the same conduct."); *see also Morris v. State*, 192 Md. App. 1, 44 (2010) (holding that where neither the charging document or the trial court defined an assaultive act that was separate from the robbery, the offenses must merge).

As the circuit court's instructions in the instant case demonstrate, the facts necessary to prove rape also prove second-degree assault. The sexual penetration of appellant's penis into the victim's vagina, by threat of force and without her consent, certainly constitutes an offensive touching, *i.e.*, an assault, and also a rape. *See* Crim. §3-303(a) (defining and prohibiting first-degree rape); Crim. §3-304(a) (defining and prohibiting second-degree rape); Crim. §3-301(g) (defining "vaginal intercourse"); Crim. §3-203(a) (criminalizing

16

second-degree assault) ; Crim. §3-201(b) (defining "assault"). We are persuaded that the circuit court should have merged the offense of second-degree assault into the offense of first-degree rape for the purposes of sentencing. *See*, *e.g.*, *Green v. State*, 243 Md. 75, 80-81 (1966) (merging common law assault into common law rape). We must, therefore, vacate the separate concurrent ten-year sentence imposed by the trial court for appellant's conviction for second-degree assault. *See id*. at 81 (vacating sentence imposed for merged offense).

We are not convinced, however, that the circuit court erred by imposing separate sentences for appellant's convictions for first-degree rape and third-degree sexual offense. If we compare the elements of the two offenses, rape and third-degree sexual offense, it is apparent that each offense has an element that the other offense does not. *See* Crim. §3-303(a) (defining and prohibiting first-degree rape); Crim. §3-304(a) (defining and prohibiting second-degree rape); Crim. §3-301(g) (defining "vaginal intercourse"); Crim. §3-307(a) (defining and criminalizing third-degree sexual offense); Crim. §3-301(f) (defining "sexual contact").

In order to prove the offense of rape, the State must prove that a defendant engaged in vaginal intercourse with the victim, *i.e.,* the penetration of the victim's vagina with his penis. *See* Crim. §3-304(a) (defining and prohibiting second-degree rape); Crim. §3-301(g) (defining "vaginal intercourse"). On the other hand, to prove the offense of third-degree sexual offense, the State must prove that a defendant engaged in sexual contact with the victim, *i.e.,* the intentional touching of the victim's genitals or other intimate body parts with

17

a part of the body other than the penis, mouth, or tongue. *See* Crim. §3-307(a) (defining and criminalizing third-degree sexual offense); Crim. §3-301(f) (defining "sexual contact"). We are persuaded, therefore, that the two offenses do not merge pursuant to the required evidence test. *Nalls v. State*, 437 Md. 674, 696 (2014) (reiterating holding of Court in *Bayne v. State,* 98 Md. App. 149, 160 (1993), wherein this Court clarified that evidence of a single act of penile penetration is not a sufficient basis for a conviction for third-degree sexual offense).

Nor do we believe that any reasonable jury, having been correctly instructed in accordance with the law, could have convicted an individual of both rape and a third-degree sexual offense based upon the same act. While we acknowledge that both nonconsensual sexual intercourse and nonconsensual sexual contact may occur in the course of a single criminal encounter, the plain language of the sexual offense statute expressly excludes penile penetration as a form of "sexual contact." *See* Crim. §3-307(a) (defining and criminalizing third-degree sexual offense); Crim. §3-301(f) (defining "sexual contact"). On the basis of all the foregoing, we discern no ambiguity regarding the legislature's intent to punish the different criminal acts by imposing separate sentences for convictions for rape and third-degree sexual offense. We are not persuaded, therefore, that the two offenses should merge pursuant to the rule of lenity.

### III.  Improper Closing Argument

During appellant's trial, appellant's attorney cross-examined two witnesses regarding the presence of a maxi-pad at the crime scene.  No maxi-pad was introduced into evidence at trial.  During defense counsel's closing argument, he argued that the jury should question the State's case because of the way the investigation was conducted and because of the State's failure to account for certain items of evidence.  In support of his argument, defense counsel repeatedly pointed out that the State could not account for a specific piece of physical evidence, a maxi-pad, "where's the maxi-pad?"  In rebuttal, the prosecutor responded, "Where's the maxi-pad? Detective Elkner told you it's at the evidence crime unit and they could not get a fingerprint off of it."  Defense counsel objected and the court overruled the objection.

Appellant asserts that the trial court abused its discretion by allowing the State to present an improper rebuttal argument.  Appellant contends that the prosecutor's comments during rebuttal "referring to officer testimony never given," were "extremely prejudicial to the defense and ensured that [a]ppellant could not receive a fair and impartial verdict."  The State contends that the prosecutor's remarks constituted logical inferences from the evidence presented and were, therefore, properly permitted by the trial court.

"The regulation of argument rests within the sound discretion of the trial court." *Grandison v. State*, 341 Md. 175, 224 (1995).  Generally, the parties are permitted "liberal freedom of speech" and "may make any comment that is warranted by the evidence or

19

inferences reasonably drawn therefrom." *Whaley v State*, 186 Md. App. 429, 452 (2009) (quoting *Spain v. State*, 386 Md. 145, 152 (2005)). It is well established, however, that counsel is not permitted to "comment on facts not in evidence or . . . state what he or she would have proven." *Mitchell v. State*, 408 Md. 368, 381 (2009); *see also Bernady v. State*, 390 Md. 1, 6 n. 1 (2005) ("[T]his personalized argument, based on facts obviously not in evidence, is highly improper. Attorneys should be vigilant to avoid arguing facts not in evidence and arguments based merely on personal experiences."); *Spain*, 386 Md. at 156 ("Courts have consistently deemed improper comments made during closing argument that invite the jury to draw inferences from information that was not admitted at trial."); *Wilhelm v. State*, 272 Md. 404, 413 (1974) ("counsel should not be permitted by the court, over proper objection, to state and comment upon facts not in evidence or to state what he could have proven. Persistence in such course of conduct may furnish good grounds for a new trial."); *Glickman v. State*, 190 Md. 516, 521 (1948) ("It is unquestionably wrong for the State's Attorney in his argument to the jury to refer to any matter not testified to by the witnesses or disclosed by the evidence"). Reversible error occurs when a party's remarks "actually misled or were likely to have misled the jury to the defendant's prejudice." *Wise v. State*, 132 Md. App. 127, 142 (2000).

At appellant's trial, the State called the detective who initially investigated the rape on the night of July 16, 2006. The detective testified generally that he and the crime lab

20

technicians collected evidence from the crime scene, that all of the evidence was secured, and that no usable fingerprints were recovered.

The prosecutor's argument that appellant contends was improper was, ""Where's the maxi-pad? Detective Elkner told you it's at the evidence crime unit and they could not get a fingerprint off of it." We are persuaded that the prosecutor's remarks regarding the whereabouts and the evidentiary value of the maxi-pad as a source for fingerprints were reasonable inferences from the detective's more general testimony regarding the collection and storage of evidence and the lack of usable fingerprints.

We further note that the jury at appellant's trial was properly instructed that the arguments of the attorneys was not evidence. The jury was also instructed that they should base their verdict upon their own recollection of the evidence presented rather than on the arguments made by counsel. Under these circumstances, to the extent that the prosecutor's comment may have stretched the limits of reasonable inference, we are persuaded that it is unlikely that any of the jurors were misled or confused by the prosecutor's fleeting remark in closing. We conclude, therefore, that the trial court did not err by overruling defense counsel's objection to the State's comments during the rebuttal closing argument.

**SENTENCE IMPOSED FOR SECOND-DEGREE ASSAULT CONVICTION VACATED. JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY OTHERWISE AFFIRMED. COSTS TO BE PAID 75% BY APPELLANT AND 25% BY MAYOR AND CITY COUNCIL OF BALTIMORE.**

21